O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.,* SHELBY EIDSON, | ) ) ) | CASE NO. CV 10-01031 JAK (RZx) |
| Plaintiffs | ) ) | FINAL ORDER ON PLAINTIFF'S MOTION TO COMPEL, FOLLOWING |
| vs. | ) ) | AUGUST 15, 2012 HEARING |
| AURORA LAS ENCINAS, LLC, et al., | ) ) ) | |
| Defendants. | ) ) | |

This matter came before the Court on August 15, 2012, as a continuation of a hearing of Relator Shelby Eidson's Motion to Compel Production of Documents. Relator appeared through her counsel Colleen Flynn. Defendant Aurora Las Encinas appeared through its counsel Alan G. Gilchrist and Debra A. Spicer. Defendant Linda Parks appeared through her counsel Patric Hooper. The Court heard argument of counsel and took the matter under submission.

Relator's motion, initially heard April 23, 2012, sought "a court order for (1) Defendants to Issue Notice to Eligible Patients; (2) Provide Opportunity For Eligible Patients to Respond; (3) Protective Order Governing All Parties; (4) Compel Discovery From Defendants." The Court denied the request for a protective order, because Relator had not made out a sufficient showing and had not articulated what protection was sought.

The Court ordered that, if Relator provided Defendant Aurora Las Encinas with the names of the persons identified by alias designations in the Fourth Amended Complaint, that Las Encinas must send notices to those persons indicating that Relator wanted to see their confidential records, and seeking the patients' response. This information was required by federal regulations before the Court could proceed to determine if first, a court order *authorizing* disclosure of the records was justified and, second, if it was, whether a court order *compelling* disclosure should be entered. *See* Order on Discovery Motions, Docket No. 213 (May 17, 2012).

Relator provided Las Encinas with the true names of those persons identified in the Complaint, and Las Encinas provided the notice the Court ordered. Thereafter, Las Encinas reported to the Court as follows:

(1)    No responses were received from patients who refused consent to the disclosure of their records;

(2)    One (1) response was received from Patient No. 28 who provided consent to the disclosure of the records . . .

(3)    One (1) response was received from Patient No. 52's conservator requesting additional information . . .

(4)    Seven (7) notices . . . were returned to Defendants by the United States Postal Service as undeliverable.

(5)    Twenty-one (21) notices . . . were not responded to.

Report re: Patient Notices, Docket No. 239, filed July 16, 2012. (This document was filed under seal. However it contains no identifying information. Out of an abundance of caution, the Court has, for the most part, through the use of ellipses, deleted references even to the particular patients, even though those patients are identified only by number.)

1    At the hearing on August 15, 2012, Las Encinas indicated that it had no

2  objection to giving Patient No. 52's conservator contact information for Relator's counsel.

3  The Court therefore ordered Las Encinas to do so.

4    For the remainder of the patients identified in the Complaint, and as to whom

5  notice was given or attempted, the Court now must determine first if it is to authorize an

6  order for disclosure.  As indicated in the Court's earlier order, this is because, under the

7  regulations implementing the Public Health Service Act, a subpoena (or, in this case, a

8  Request to Produce) can have no legal effect without the Court's first determining that an

9  authorizing order is appropriate.  *See* 42 C.F.R. § 2.61(a).  Further, as noted in the Court's

10  prior order, the Court has ordered, as a matter of expedience, that the procedure under the

11  Public Health Service Act be followed with respect to all patients identified in the Fourth

12  Amended Complaint.  This is because the regulations prohibit Las Encinas even from

13  verifying whether a patient was being treated for substance abuse or not; thus, absent, at

14  the very least, an averment by Relator herself that a particular patient was *not* being treated

15  for substance abuse, the only effective way of insuring compliance with the regulations is

16  to apply them to all patients.

17    Las Encinas argues that under no circumstances is Relator entitled to obtain

18  the documents, because it is not an auditor or evaluator of the program.  *See* 42 C.F.R.

19  §§ 2.53, 2.66.  As Las Encinas' counsel acknowledged, however, there is no authority for

20  this position.  Moreover, the regulations state just the reverse, that an order of disclosure

21  may be applied for "by any person having a legally recognized interest in the disclosure

22  which is sought."  42 C.F.R. § 2.64(a).  Further, the regulation authorizes the filing of an

23  application "as part of a pending civil action in which it appears that the patient records are

24  needed to provide evidence."  *Id*.  Therefore, Plaintiff has standing to bring this application.

25    A good cause standard governs whether the Court should issue an order

26  authorizing a further order for disclosure:

27

28

An order under this section may be entered only if the court determines that good cause exists.   To make this determination the court must find that:

(1) Other ways of obtaining the information are not available or would not be effective; and

(2) The public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship and the treatment services.

42 C.F.R. § 2.64(d).  Even if the Court finds good cause, however, it cannot authorize the disclosure of *all* the information in the records.   In particular, it cannot authorize the disclosure of confidential communications, except in very stringently-limited circumstances:

(a) A court order under these regulations may authorize disclosure of confidential communications made by a patient to a program in the course of diagnosis, treatment, or referral for treatment only if:

(1) The disclosure is necessary to protect against an existing threat to life or of serious bodily injury, including circumstances which constitute suspected child abuse and neglect and verbal threats against third parties;

(2) The disclosure is necessary in connection with investigation or prosecution of an extremely serious crime, such as one which directly threatens loss of life or serious bodily injury, including homicide, rape, kidnapping, armed robbery, assault with a deadly weapon, or child abuse and neglect; or

(3) The disclosure is in connection with litigation or an administrative proceeding in which the patient offers testimony or other evidence pertaining to the content of the confidential communications.

42 C.F.R. § 2.63.  These circumstances do not exist in the present case.  While Relator argues that there are threats to life or serious bodily injury that are alleged in the Complaint, there is no allegation, and certainly no evidence, of any *existing* threat; indeed, all the circumstances alleged with specificity in the Complaint are of events that already have occurred and, while the Court does not question their seriousness, there is nothing present, nothing urgent that Relator has identified, that would call for stripping away the protection for confidential communications.  Thus, if the Court is to authorize any order, it would be an order that would exclude confidential communications.

The regulations do not define the term "confidential communications." However, confidential communications cannot be "diagnosis" or "treatment;" the regulations protect against disclosure of confidential communications made "in the course of" diagnosis and treatment, 42 C.F.R. § 2.63(a), and if they are communications made in the course of diagnosis and treatment, they cannot be the diagnosis and treatment themselves.  Thus, the Court concludes that any authorizing order must be limited to documents containing the alias designation of the patients referred to in the Fourth Amended Complaint; that patient's diagnosis; and that patient's treatment, to the extent that the treatment can be identified without the use of confidential communications. *Cf. United States ex rel Chandler v. The Hektoen Institution for Medical Research*, 2003 WL 22284199 (N.D. Ill. 2003).

Returning then to whether the Court should issue an authorizing order in the first place, the question is whether there is good cause for an order, recognizing that any order must contain these limitations.  The first prescription in the regulations is that other ways of obtaining the information must not be available or must not be effective.  42

C.F.R. § 2.64(d)(1).  Neither side submitted evidence on this point.  However, the Court assumes that, since the records are so protected by the regulations, in fact there is no other or effective way of obtaining them.

Therefore the Court proceeds to the nub of the good cause analysis:  whether "[t]he public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship and the treatment services."   42 C.F.R. § 2.64(d)(2).  The parties' analysis does not run very deep.  Relator simply points to the allegations of the Complaint and asserts that, because she has alleged incidents that were serious, that therefore the public interest lies in disclosure of the records.  It must be remembered, however, that Relator does not appear in this action as a substitute auditor or enforcer of hospitalization standards; those duties are to be handled by others, and are addressed separately in the regulations. 42 C. F. R. § 2.53, 2.66.  Rather, Relator appears as a *qui tam* Plaintiff asserting that Defendants cheated the Government by making false claims, and those claims were false, Relator pleads, because Las Encinas charged for services that were worthless.  Thus the "need" for the patient records that the regulation speaks of applies, in this case, to proof that Las Encinas provided these patients with worthless services, and the "public interest" that the regulation speaks of applies, in this case, to the public's concern that its Government has been cheated out of its funds. Yet, as Relator's counsel acknowledged at argument, records that do *not* contain confidential communications may not help a lot towards proving that a substance abuse patient received services that were worthless; one would think that the confidential communications would be critical to establishing whether the services were worthwhile or not.  (As Defense counsel acknowledged at oral argument, the regulations are the proverbial two-edged sword here; it becomes more difficult to prove that treatment to substance abuse patients *was* worthwhile — or, at least, was not worthless — without records containing confidential communications.)

While the showing of a need and a public interest to see the (expurgated) documents thus is weak, so too is the showing of the other side of the equation — "the

potential injury to the patient, the physician-patient relationship and the treatment services." These factors would be strongest with evidence of any sort as to particular patients. Yet, somewhat surprisingly to the Court, counsel for Las Encinas represented to the Court that he had not even seen the records himself, and no client representative of Las Encinas presented any evidence that any particular patient identified in the Fourth Amended Complaint would suffer any injury by release of his/her records, especially if those records did not disclose confidential communications. Likewise, there is no particularization of any way in which treatment would be affected, or the physician-patient relationship impaired.

These factors also were not developed on any abstract basis either. Thus, in addition to the fact that there is no evidence or argument as to the impact on any particular patient, no physician serving at Aurora Las Encinas opined on any difficulty in treating current or future patients, such as a projected loss in confidence reposed in the treating physician or the institution, if records of this sort were disclosed in these proceedings. No mental health professional gave any evidence at all to buttress these factors in the abstract. Essentially, therefore, there is a total absence of any basis upon which to place any weight on the side of the equation addressing harm from disclosure.

Under the circumstances, therefore, the Court concludes that the weak showing of good cause outweighs the even weaker showing of harm from disclosure. Therefore, Relator has made out a sufficient showing for an order *authorizing* disclosure of records.

The Court thus proceeds to the second question, whether an order compelling disclosure should issue. Here the analysis reverts to the more familiar rubric under the Federal Rules of Civil Procedure. The Relator has moved to compel; the Court must evaluate the objections. The Court has reviewed the Requests for Production that are the subject of this motion, together with the objections. The objection to each request is the same: that production would violate the Public Health Safety Act, and that the request is overbroad. Thus, in addition to the question as to whether an order *authorizing* disclosure

should issue — which is the Public Health Safety Act question, and which the Court now has answered — the only issue as to whether an order *compelling* disclosure should issue is whether the requests are overbroad.

As the Court explained in its Order on Discovery Motions, Docket No. 213 (May 17, 2012), a party is entitled to discovery of relevant and unprivileged information, but relevance is defined as relevance to the claims and defenses of the parties. In a fraud action like this one, that means the matters that are pleaded with particularity. In what appears largely to be an untimely *sub rosa* request for reconsideration, Relator argues that the discovery should be broader at this stage. However, discovery in this case has not been expanded from discovery "as to claims and defenses" to the broader scope of discovery as to the "subject matter of the action." *See* FED. R. CIV. P. 26(b). Nor, in fact, is the discovery pertinent on a broad institution-wide basis over a period of years, on the theory that the identified patients are only examples; Plaintiff does not plead "a complex and far-reaching fraudulent scheme with particularity," *United States ex rel Bledsoe v. Community Health Systems*, 501 F.3d 493, 510 (6th Cir. 2007). Plaintiff does not, for example, make the claim that *all* patients received worthless services; rather, Plaintiff pleads the "who, what, where, when and how" of the alleged fraud, *see Ebeid v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003), only as to the named alias patients.

Therefore, under the present state of the case, Requests to Produce that seek all records from 2003 to the present, on a variety of subjects, are in fact overbroad and, as the Court noted in its earlier order, also vastly jeopardize the privacy rights of persons for whom no connection to the lawsuit has been identified. Accordingly, the motion to compel production of Requests Nos. 1, 2, 18, 20, 21, 22, 23, 24, 25, 26, and 31 is granted, with the following restrictions:

1.   The responsive documents shall be limited to those patients identified by alias designation in the Fourth Amended Complaint. On any document in which such a patient is listed, the patient's name shall be blacked out, and the alias designation used

by Relator in the Complaint shall be inserted.  Any other patient names shall be redacted from the document in question.

2.      In addition to the alias designation of the patient, the documents may contain the diagnosis of the patient, and any treatment, unless the treatment reveals confidential communications.  The document also may contain all other information that is not confidential communications.  Confidential communications shall be redacted.

3.      Provided that Patient No. 28 executes a consent form containing the information specified in 42 C.F.R. §2.31, any information that falls within the call of the Requests to Produce as to Patient No. 28 shall be produced, without redaction.  If Patient No. 28 does not execute a consent form in accordance with 42 C.F.R. § 2.31, then records referencing this patient shall be redacted as with the other patients identified in the Fourth Amended Complaint.

4.      Any documents produced shall be produced to all parties in this action. All parties shall maintain such documents in confidence, use them only for this action, and, if it becomes necessary to file them, shall file them under seal.

5.      The documents shall be produced within 30 days.


IT IS SO ORDERED.


DATED:  August 28, 2012


_____
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE


cc:  Hon. John A. Kronstadt