**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01031 JAK (RZx) | Date | September 6, 2012 |
|---|---|---|---|
| Title | United States of America v. Aurora Las Encinas, LLC, et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) ORDER DENYING RELATOR'S MOTION FOR REVIEW OF MAGISTRATE JUDGE'S 05/17/12 DISCOVERY ORDER (Dkt. 217)

## I. INTRODUCTION

Plaintiff/Relator Shelby Eidson ("Plaintiff"), a former employee of Defendant Aurora Las Encinas Hospital, LLC ("Aurora"), brought this *qui tam* action pursuant to the federal and state False Claims Acts ("FCA"). Plaintiff now seeks to discover patient records and information from Aurora to support her allegations that Aurora provided worthless services to its patients. This request seeks information subject to the patient-psychotherapist privilege and the substance abuse treatment privilege. Magistrate Judge Ralph Zarefsky ruled on the parties' competing discovery motions and addressed the issues raised by these privileges on May 17, 2012. Plaintiff challenges Judge Zarefsky's ruling on the bases that: (i) he improperly limited the scope of available discovery; and (ii) he imposed unreasonable notice requirements that exceed those required by law. The Court held a hearing on this motion on July 2, 2012, and took the matter under submission. Dkt. 235. For the reasons set forth in this Order, the Court DENIES Plaintiff's motion without prejudice to this Court's continuing oversight of potential discovery issues that may arise as the authorized notice process moves forward.

## II. BACKGROUND

### A. Factual Background

Underlying the claims in this action are Plaintiff's allegations to the effect that Defendants submitted false claims to the government under Medicare, Medicaid and Medi-Cal plans. Plaintiff worked for Aurora from 2005 through 2011 as a mental health worker. Aurora treats mental health and substance abuse patients, often by providing extended "live-in" services. For qualifying patients, federal and state insurance programs cover the costs of Aurora's services. Once a patient is admitted to the Aurora facility, the hospital prepares a treatment plan and submits claims for Medicare and Medicaid

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01031 JAK (RZx) | Date | September 6, 2012 |
|---|---|---|---|
| Title | United States of America v. Aurora Las Encinas, LLC, et al. | | |

payment based on that plan. Plaintiff alleges that the treatment described in the plan, and billed to the government, is not provided to the patient. According to Plaintiff, Defendants direct the staff -- from physicians to social workers -- to minimize the care actually provided to patients notwithstanding the billing for services. Thus, Plaintiff alleges that Defendants have realized huge profits by billing for care never provided, and that the care that has been provided is so lacking in value that it was worthless. In particular, Plaintiff alleges that the hospital was compensated through state and federal programs for care that was deficient due to: severe understaffing and nursing staff shortages in violation of 42 C.F.R. § 482.62 and § 70217; inadequate staff-to-patient ratios and not providing patients with a 1:1 staff-to-patient ratio when such care was deemed medically necessary, with the result being that patients injured themselves and escaped; failing to provide adequate care for adolescent patients, some of whom were admitted to adult units, and failing to provide adequate supervision of adolescents such that one adolescent female was raped and other patients nearly committed suicide; and inadequate facilities, including unsanitary conditions, such as no sinks by restrooms, non-functioning fire alarms, and leaking plumbing and water lines, resulting in raw sewage leaking into inhabited areas.

### B.  Procedural History

On February 11, 2010, Plaintiff commenced this action as Relator on behalf of the United States and the State of California. She named Aurora and 12 other defendants who are individuals or business entity health care providers.[1] On October 8, 2010, the United States gave notice that it did not intend to intervene in the action. Dkt. 8. On April 11, 2011, Plaintiff amended her complaint, Dkt. 41, and on June 17, 2011, Plaintiff filed a Second Amended Complaint ("SAC"), Dkt. 99.

On September 8, 2011, the Court granted in part and denied in part Defendants' motions to dismiss Plaintiff's SAC. Dkt. 124. With respect to Plaintiff's first cause of action for the submission of false claims, the Court dismissed Plaintiff's claims against all of the individual defendants, except Linda Parks, with leave to amend. *See id.* The Court dismissed with prejudice Plaintiff's third cause of action based on the Social Security Act. *Id.* The Court determined which statutes and regulations could properly form the basis for Plaintiff's claims of legally false certification and denied Defendants' motions with respect to Plaintiff's other causes of action. *See id.*

In response to that Order, on September 30, 2011, Plaintiff filed her Third Amended Complaint ("TAC") against Defendants Aurora, Linda Parks, Signature Healthcare Services, LLC ("Signature"), and Does 1 through 10 (collectively, "Defendants"), advancing the following causes of action: (i) substantive violations of the federal FCA, 31 U.S.C. § 3729 *et seq.*; (ii) federal FCA conspiracy, 31 U.S.C. §§ 3729(a)(3) and 3732(b); (iii) violations of the California FCA, CAL. GOV'T CODE § 12651 *et seq.*; (iv) unlawful retaliation in violation of the federal FCA, 31 U.S.C. § 3730(h); (v) unlawful retaliation

---

[1] Complaint, Dkt. 1. Plaintiff's claims against most of these Defendants were dismissed as a result of Defendants' motions to dismiss Plaintiff's Second Amended Complaint. Dkt. 124.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01031 JAK (RZx) | Date | September 6, 2012 |
|---|---|---|---|
| Title | United States of America v. Aurora Las Encinas, LLC, et al. | | |

in violation of the California FCA, CAL. GOV'T CODE § 12653; and (vi) unlawful retaliation in violation of the California Health and Safety Code, CAL. GOV'T CODE § 1278.5. Dkt. 127. Each cause of action names all Defendants.

On December 5, 2011, the Court granted in part and denied in part Defendants' motions to dismiss the TAC. Dkt. 140. Plaintiff voluntarily dismissed her second cause of action against all Defendants, and her fourth, fifth and sixth causes of action against Linda Parks. Dkt. 135. In light of these voluntary dismissals, the Court denied Defendant Parks' motion to dismiss, granted in part Defendants Aurora and Signature's motion to dismiss, with leave to amend so that Plaintiff could seek to comply with the pleading requirements of Rule 9(b) with respect to claims against Signature, and granted in part Defendants' motion to strike. Dkt. 140. Plaintiff was instructed to file a fourth amended complaint on or before December 26, 2011. Dkt. 140.

On December 27, 2011, one day after the Court-imposed deadline, Plaintiff attempted to file electronically her Fourth Amended Complaint ("FAC"). Dkt. 144. The document was rejected because it was not manually filed, as required by the rules for all initiating documents. Dkt. 145 & 146. The FAC was then filed on December 28, 2011. Dkt. 150. In the FAC, Plaintiff advances the following causes of action: (i) substantive violations of the federal FCA, 31 U.S.C. § 3729 *et seq.*, against all Defendants; (ii) violations of the California FCA, CAL. GOV'T CODE § 12651 *et seq.*, against all Defendants; (iii) unlawful retaliation in violation of the federal FCA, 31 U.S.C. § 3730(h), against Aurora and Signature; (iv) unlawful retaliation in violation of the California FCA, CAL. GOV'T CODE § 12653, against Aurora and Signature; and (v) unlawful retaliation in violation of the California Health and Safety Code, CAL. GOV'T CODE § 1278.5, against Aurora and Signature.

On March 26, 2012, the Court denied Defendants' motions to dismiss Plaintiff's FAC.

After this Court instructed that any necessary motions pertaining to the psychotherapist-patient and substance abuse privileges were to be filed with Magistrate Judge Zarefsky, Dkt. 166, the parties filed three separate motions. Thus, Defendant Linda Parks filed a motion to compel Plaintiff's compliance with federal requirements for disclosure of medical records, Dkt. 168, Defendants Aurora and Signature filed a motion to compel Plaintiff to return to Defendants documents that they contend Plaintiff improperly took during her employment, Dkt. 169, and Plaintiff filed a motion for (i) an order compelling Defendants to issue notice to eligible patients; (ii) an opportunity for eligible patients to respond; (iii) a protective order governing all parties; and (iv) an order compelling discovery from Defendants, Dkt. 198. Judge Zarefsky held a hearing on these motions on April 23, 2012, and took them under submission. Dkt. 209.

On May 17, 2012, Judge Zarefsky issued a single Order addressing the privilege issues raised in all three motions. Dkt. 213. In that Order, he stated that notice would be sent only to those patients identified by aliases in Plaintiff's FAC, and that notice would be sent in accordance with the Public

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01031 JAK (RZx) | Date | September 6, 2012 |
|---|---|---|---|
| Title | United States of America v. Aurora Las Encinas, LLC, et al. | | |

Health Services Act, 42 U.S.C. § 290dd-2, which applies to protect the confidentiality of patients receiving publicly funded substance abuse treatment. Thus, Judge Zarefsky required that Plaintiff send notice to all identified patients regardless of whether they were receiving substance abuse treatment. Judge Zarefsky did not reach the issue whether to allow disclosure of patient records, deeming that issue unripe for determination. In accordance with this plan, Judge Zarefsky ordered Plaintiff to prepare a separate notice for each of the patients whom she asserts received services that resulted in a false claim, and in each notice, describe the allegations in the FAC with respect to that patient. The notice was also to state that Plaintiff was seeking to disclose the patients' records, which would otherwise be confidential, in this lawsuit, and that the patient would have 30 days to respond and provide comments to the Court regarding the proposed disclosure. Plaintiff was to provide the notices to Aurora by June 1, 2012, and Aurora was ordered to distribute the notices to the individual patients.

### III.   ANALYSIS

#### A.   Standard of Review

Federal Rule of Civil Procedure 72(a) governs the referral of non-dispositive matters to magistrate judges. Under Rule 72(a), the district court reviews the magistrate judge's rulings upon a party's objection: "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or contrary to law." FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A). "Acting as an appellate court, this Court has the power to 'affirm, modify, vacate, set aside or reverse' the magistrate judge's order and 'may remand the cause and direct the entry of such appropriate judgment, decree or order, or require such further proceedings… as may be just under the circumstances.'" *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 971 (C.D. Cal. 2010) (quoting 28 U.S.C. § 2106). When considering findings of fact, the district court applies the clearly erroneous standard, which is "significantly deferential, requiring a definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prods. v. Constr. Laborers Pensions Trust*, 508 U.S. 602, 623 (1993) (internal quotations omitted). However, the district judge may reverse any part of the order that is "contrary to law." *See Adolph Coors Co. v. Wallace*, 570 F. Supp. 202, 205 (N.D. Cal. 1983) ("Thus, while we may review magistral findings of fact, subject only to the 'clearly erroneous' standard, we may overturn any conclusions of law which contradict or ignore applicable precepts of law…."); *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 91 (3d Cir. 1992) ("[T]he phrase 'contrary to law' indicates plenary review as to matters of law").

#### B.   Plaintiff's Motion for Review

Plaintiff challenges Magistrate Judge Zarefsky's by advancing two primary arguments: (i) he improperly limited the scope of available discovery; and (ii) he imposed unreasonable notice requirements that exceed those required by law.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01031 JAK (RZx) | Date | September 6, 2012 |
|---|---|---|---|
| Title | United States of America v. Aurora Las Encinas, LLC, et al. | | |

1. <u>The Appropriate Scope of Patient Discovery</u>

   a) Overview

Magistrate Judge Zarefsky's order limits Plaintiff's discovery, at this stage in the proceedings, to those patients who are specifically identified in the FAC. Plaintiff objects to this limitation, arguing that Judge Zarefsky applied the wrong standard in determining the scope of available discovery. Thus, she contends that, under Rule 26, she should be permitted to proceed to discovery on the entire fraudulent scheme rather than only on the instances of fraud identified in her FAC. Plaintiff also contends that any privilege issues should not affect the scope of available discovery. Instead, she argues that she is entitled to seek discovery as to all patients who may have received worthless services, and then after responsive documents are identified, the Court can address the privilege issues raised to determine which documents actually can be produced.

   b) Legal Standard Governing Scope of Patient Discovery

Generally, the relevance requirement of Rule 26(b)(1) governs the scope of discoverable information. Rule 26(b)(1) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." In the FCA context, the Sixth Circuit has held that, "where a relator pleads a complex and far-reaching fraudulent scheme with particularity, and provides examples of specific false claims submitted to the government pursuant to that scheme, a relator may proceed to discovery on the entire fraudulent scheme." *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 510 (6th Cir. 2007). The Sixth Circuit went on to explain the significance of Rule 9(b) in ascertaining the scope of the fraudulent scheme as follows:

> The critical question then becomes how broadly or narrowly a court should construe the concept of a fraudulent scheme. If a court were to construe a fraudulent scheme at a high level of generality--for example, if the court concluded that the fraudulent scheme consisted of "the defendant hospital submitting false claims to Medicare or Medicaid"--then the court would, in effect, violate the principle that improperly pled allegations of fraud do not become adequate merely by placing them in the same complaint with allegations that are sufficient under Rule 9(b). Allowing such a complaint to go forward *in toto* would fail to provide defendants with the protections that Rule 9(b) was intended to afford them: Defendants would not have notice of the specific conduct with which they were charged, they would be exposed to fishing expeditions and strike suits, and they would not be protected from "spurious charges of immoral and fraudulent behavior." *Sanderson*, 447 F.3d at 877 ... On the other hand, were a court to construe the concept of a fraudulent scheme in an excessively narrow fashion, the policies promoted by the rule allowing a relator to plead examples, rather than every false claim, would be undermined.
>
> We conclude that the concept of a false or fraudulent scheme should be construed as narrowly as is necessary to protect the policies promoted by Rule 9(b).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01031 JAK (RZx) | Date | September 6, 2012 |
|---|---|---|---|
| Title | United States of America v. Aurora Las Encinas, LLC, et al. | | |

> Specifically, we hold that the examples that a relator provides will support more generalized allegations of fraud only to the extent that the relator's examples are representative samples of the broader class of claims. *See United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 557 (8th Cir. 2006) ("Clearly, neither this court nor Rule 9(b) requires [a relator] to allege specific details of every alleged fraudulent claim forming the basis of [the relator's] complaint. However ... [the relator] must provide some representative examples of [the defendants'] alleged fraudulent conduct, specifying the time, place, and content of their acts and the identity of the actors."), *cert. denied* 549 U.S. 881, 127 S.Ct. 189, 166 L.Ed.2d 142 (2006); *Peterson v. Cmty. Gen. Hosp.*, No. 01 C 50356, 2003 WL 262515, at *2 (N.D.Ill.2003) (unpublished) ("To be clear, the court does not expect relator to list every single patient, claim, or document involved, but he must provide at least some representative examples."); *United States ex rel. Schuhardt v. Wash. Univ.*, 228 F.Supp.2d 1018, 1034-35 (D.Mo.2002) ("[A] relator 'must provide some representative samples of the fraud which detail the specifics of who, where and when.' " (quoting *United States ex rel. Minn. Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.*, 1997 U.S. Dist. LEXIS 21402 at *33 (D.Minn. Mar. 3, 1997) (unpublished))). In order for a relator to proceed to discovery on a fraudulent scheme, the claims that are pled with specificity must be "characteristic example[s]" that are "illustrative of [the] class" of all claims covered by the fraudulent scheme. Webster's Third New International Dictionary of the English Language Unabridged, 1926 (1993) ("representative" definition 4). The examples of false claims pled with specificity should, in all material respects, including general time frame, substantive content, and relation to the allegedly fraudulent scheme, be such that a materially similar set of claims could have been produced with a reasonable probability by a random draw from the total pool of all claims. With this condition satisfied, the defendant will, in all likelihood, be able to infer with reasonable accuracy the precise claims at issue by examining the relator's representative samples, thereby striking an appropriate balance between affording the defendant the protections that Rule 9(b) was intended to provide and allowing relators to pursue complex and far-reaching fraudulent schemes without being subjected to onerous pleading requirements.

*Id.* at 510-11. Based on these principles, the *Bledsoe* court allowed the plaintiff to proceed with discovery with respect to one patient who was diagnosed with tachycardia so that the hospital could receive additional reimbursements for procedures never conducted. *See id.* at 514-15.

        c)     Application

*Bledsoe*, the case on which Plaintiff relies, supports Judge Zarefsky's approach of defining the scope of discovery on the alleged fraudulent scheme by reference to Rule 9(b). Judge Zarefsky determined that Plaintiff's alleged representative examples are not sufficient to permit Plaintiff to proceed to discovery on a broader fraudulent scheme that all services provided by Aurora were worthless. Judge Zarefsky reasoned as follows:

> [T]he pleadings… define the scope of the present discovery, for discovery is limited to relevant evidence, which the rules define as evidence that is relevant to the claims and

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01031 JAK (RZx) | Date | September 6, 2012 |
|---|---|---|---|
| Title | United States of America v. Aurora Las Encinas, LLC, et al. | | |

> defenses of the parties. FED. R. CIV. P. 26 (b). The discovery Plaintiff has propounded would require contact with all [Aurora] patients for a period of nine years, on the assertion that, by giving examples of problems, Plaintiff is entitled to discovery pertaining to all the patients. This would be a hugely burdensome task, and multiply any risks that patients' privacy would be compromised, and the efficacy of the treatment programs undermined.
> …
> Plaintiff has not pled – nor, the Court suspects, could she, consistent with FED. R. CIV. P. 11 – that all statements submitted by [Aurora] to the Government have been false. The Court therefore is left with the parts of the Complaint that Plaintiff *does* plead with particularity, and those are the parts that identify particular patients by alias designations.

May 17, 2012 Order on Discovery Motions, pp. 5-6, Dkt. 213. Thus, Judge Zarefsky determined that Plaintiff had not pleaded that the entire hospital is run as part of a fraudulent scheme, and limited Plaintiff's discovery in a manner that was consistent with the allegations that she had made. In light of the standards set forth in *Bledsoe*, Judge Zarefsky's reasoning and preliminary limits on Plaintiff's discovery are not contrary to law.

      2.    <u>The Imposed Notice Requirements</u>

          a)    Overview

There are different standards for providing notice to patients in advance of the disclosure of their medical records, which depend on the type of treatment being provided. Judge Zarefsky ordered that notice be sent to the patients identified in the FAC in accordance with the Public Health Services Act, 42 U.S.C. § 290dd-2, which applies to protect the confidentiality of information pertaining to patients receiving publicly funded substance abuse treatment. Thus, Judge Zarefsky required that Plaintiff provide notice consistent with § 290dd-2 to all identified patients, including those patients only receiving mental health treatment, regardless of potentially differing notice standards. Plaintiff objects to this ruling, contending that the records of patients who have been diagnosed only with mental illness should be discoverable under the more lenient standards set forth in the Health Insurance Portability and Accountability Act ("HIPAA").

          b)    Governing Privileges and Notice Requirements

              (1)    Substance Abuse Treatment Privilege

42 U.S.C. § 290dd-2 provides for the confidentiality of substance abuse records:

> Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse …, which is conducted, regulated, or directly or indirectly assisted by

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01031 JAK (RZx) | Date | September 6, 2012 |
|---|---|---|---|
| Title | United States of America v. Aurora Las Encinas, LLC, et al. | | |

> any department or agency of the United States shall, except as provided in subsection (e) of this section, be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b) of this section.

42 U.S.C. § 290dd-2(a). Subsection (b), which governs permitted disclosure of records, identifies a limited range of exceptions to the general rule that such records must remain confidential. Thus, the records may be disclosed: (i) with patient consent; (ii) "to medical personnel to the extent necessary to meet a bona fide medical emergency"; (iii) to "qualified personnel for the purpose of conducting scientific research, management audits, financial audits, or program evaluation, but such personnel may not identify, directly or indirectly, any individual patient in any report of such research, audit, or evaluation, or otherwise disclose patient identities in any manner"; and (iv) when "authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor, including the need to avert a substantial risk of death or serious bodily harm." Subsection (g) authorizes the adoption of regulations to carry out the purposes of the section, including providing procedures and criteria for issuance of a court order under subsection (b). Such regulations are set forth in 42 C.F.R. § 2.1, *et seq.*

    The governing regulations provide that the "patient records to which these regulations apply may be disclosed or used only as permitted by these regulations and may not otherwise be disclosed or used in any civil, criminal, administrative, or legislative proceedings conducted by any Federal, State, or local authority." 42 C.F.R. § 2.13. Under 42 C.F.R. § 2.61, the legal effect of a court order is only to authorize a disclosure of patient information that would otherwise be prohibited; it does not compel production. 42 C.F.R. § 2.64 sets forth the procedures for obtaining protected records in civil proceedings. First, the regulations require notice:

> The patient and the person holding the records from whom disclosure is sought must be given:
> (1) Adequate notice in a manner which will not disclose patient identifying information to other persons; and
> (2) An opportunity to file a written response to the application, or to appear in person, for the limited purpose of providing evidence on the statutory and regulatory criteria for the issuance of the court order.

42 C.F.R § 2.64(b). The regulations also set forth the requirements for entering an order for good cause:

> An order under this section may be entered only if the court determines that good cause exists. To make this determination the court must find that:
> (1) Other ways of obtaining the information are not available or would not be effective; and

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01031 JAK (RZx) | Date | September 6, 2012 |
|---|---|---|---|
| Title | United States of America v. Aurora Las Encinas, LLC, et al. | | |

> (2) The public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship and the treatment services.

42 C.F.R. § 2.64(d). Thus, the proper procedure for obtaining records of substance abuse patients is to provide the patients with both notice and an opportunity to respond. If they do not respond or consent, the regulations then permit a party to seek a court order for good cause to authorize, but not compel, the disclosure.

(2) Patient-Psychotherapist Privilege

45 C.F.R. § 164.508 provides that, except "as otherwise permitted or required by this subchapter, a covered entity may not use or disclose protected health information without an authorization that is valid under this section." 45 C.F.R. § 164.508(a)(1). Under 45 C.F.R. § 164.510, a "covered entity may use or disclose protected health information, provided that the individual is informed in advance of the use or disclosure and has the opportunity to agree to or prohibit or restrict the use or disclosure." Section 164.512 of the regulations provide a means of disclosing "protected health information without the written authorization of the individual, as described in § 164.508, or the opportunity for the individual to agree or object as described in § 164.510, in the situations covered by this section." One of these exceptions to the general notice and authorization rules allows for disclosure in connection with judicial and administrative proceedings:

> (1) Permitted disclosures. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:
> (i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or
> (ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:
> (A) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iii) of this section, from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or
> (B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.

45 C.F.R. § 164.512(e)(1). Subsection (e)(2) explicitly states that the "provisions of this paragraph do not supersede other provisions of this section that otherwise permit or restrict uses or disclosures of protected health information." 45 C.F.R. § 164.512(e)(2).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01031 JAK (RZx) | Date | September 6, 2012 |
|---|---|---|---|
| Title | United States of America v. Aurora Las Encinas, LLC, et al. | | |

Notably, 45 C.F.R. § 164.508 explicitly requires authorization for the disclosure of psychotherapy notes, with only limited exceptions: "a covered entity must obtain an authorization for any use or disclosure of psychotherapy notes, except: (i) To carry out the following treatment, payment, or healthcare operations: (A) Use by the originator of the psychotherapy notes for treatment; (B) Use or disclosure by the covered entity for its own training programs…; or (C) Use or disclosure by the covered entity to defend itself in a legal action or other proceeding brought by the individual; and (ii) A use or disclosure that is required by § 164.502(a)(2)(ii) or permitted by § 164.512(a); § 164.512(d) with respect to the oversight of the originator of the psychotherapy notes; § 164.512(g)(1); or § 164.512(j)(1)(i)." 45 C.F.R. § 164.508(a)(2). 45 C.F.R. § 164.512(e)(2) is not listed as an exception to the rule requiring authorization for the disclosure of psychotherapy notes.

    c)  Whether the Imposed Notice Requirements Are Contrary to Law

Medical records protected only by HIPAA generally are discoverable "in response to an order of a court." 45 C.F.R. § 164.512(e)(1)(i). However, for psychotherapy notes, a court order is not listed as one of the limited available exceptions for disclosing such notes absent authorization. 45 C.F.R. § 164.508(a)(2). Thus, authorization appears to be necessary for the discovery Plaintiff seeks, even pursuant to HIPAA. Further, it is clear from the regulations as a whole that their notice and consent provisions are important parts of the disclosure regime designed to protect patients' privacy interests, whether or not psychotherapy or substance abuse patient records are at issue. Although notice is not necessarily *required* to obtain some of the records Plaintiff seeks, it does not follow that imposing a notice requirement is contrary to law, especially when the heightened standards governing psychotherapy notes may be at issue. Moreover, Judge Zarefsky's requirement that all patients receive notice was imposed to protect the identities of the substance abuse treatment patients:

> Since [Aurora] treats both psychiatric and substance abuse patients, it is possible that some of the patients Plaintiff asserts are the predicate for [Aurora's] alleged false statements are not substance abuse patients whose records are covered by the Public Health Service Act. They may be psychiatric patients who are not treated for substance abuse. However, no one, except, perhaps, Plaintiff knows this, and Defendants cannot say whether the patients are substance abuse patients or not, even if Plaintiff provides them with the names. This is because, under the regulations adopted to implement the Public Health Service Act,
>
>> The restrictions on disclosure in these regulations apply to any information, whether or not recorded, which:
>> (1) Would identify a patient as an alcohol or drug abuser either directly, by reference to other publicly available information, or through verification of such an identification by another person . . . .
>
> Thus, if, for example, Plaintiff were to give names to [Aurora] and ask that [Aurora] send the notice only to those patients with a substance abuse diagnosis, the very fact of

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01031 JAK (RZx) | Date | September 6, 2012 |
|---|---|---|---|
| Title | United States of America v. Aurora Las Encinas, LLC, et al. | | |

> [Aurora's] doing so would identify those patients in violation of the regulations. The better practice is for [Aurora] simply to send the notice to any patients Plaintiff names to [Aurora], regardless of diagnosis.

May 17, 2012 Order on Discovery Motions, pp. 7-8, Dkt. 213. As this explanation shows, Judge Zarefsky considered the governing notice requirements, and was aware that a different standard for notice may apply to certain patients whose treatment was unrelated to substance abuse. That he nonetheless imposed heightened notice requirements on all patients was not contrary to law; it was a reasoned decision based on a balancing of the patients' right to privacy and Plaintiff's right to discovery. For all of these reasons, Judge Zarefsky's adopted procedure for providing patient notice was neither clearly erroneous with respect to the underlying factual issues related to the discovery process nor contrary to law.

### IV.     CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for review. Magistrate Judge Zarefsky utilized the proper legal standard for determining the scope of available discovery relating to the alleged fraudulent scheme by applying Rule 26(b) through the lens of Rule 9(b). Further, the requirement that Plaintiff provide notice to all patients, not just to substance abuse patients, is neither clearly erroneous nor contrary to law. The Court emphasizes that Judge Zarefsky's May 17, 2012 order was the first step of many in this sensitive discovery process. After receiving patient responses to the first phase of notice, this discovery process will be subject to Judge Zarefsky's continued active management. Thus, the denial of Plaintiff's motion for review is without prejudice to this Court's continuing oversight of potential privilege and notice issues that may arise as discovery progresses.

**IT IS SO ORDERED.**

:

Initials of Preparer     ak