UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | LA CV10-01031 JAK (RZx) | Date | September 6, 2012 |
|---|---|---|---|
| Title | United States of America v. Aurora Las Encinas, LLC, et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) ORDER RE:

PLAINTIFF/RELATOR'S MOTION TO STRIKE DEFENDANTS AURORA LAS ENCINAS, LLC AND SIGNATURE HEALTHCARE SERVICES, LLC'S COUNTERCLAIMS AGAINST RELATOR SHELBY EIDSON (Dkt. 211)

PLAINTIFF/RELATOR'S MOTION TO STRIKE DEFENDANTS' AMENDED COUNTERCLAIMS AGAINST RELATOR SHELBY EIDSON (Dkt. 229)

I. **INTRODUCTION**

Plaintiff/Relator Shelby Eidson ("Plaintiff"), a former employee of Defendant Aurora Las Encinas Hospital, LLC ("Aurora"), brought this *qui tam* action pursuant to the federal and state False Claims Acts ("FCA"). Plaintiff worked for Aurora from 2005 through 2011 as a mental health worker. Plaintiff alleges that Defendants submitted false claims to the government under Medicare, Medicaid and Medi-Cal plans. In 2008, after three of her patients allegedly suffered tragic and preventable deaths, Plaintiff began reporting patient incidents to government regulators and reporters at the *Los Angeles Times*. On February 11, 2010, Plaintiff commenced this action. On April 16, 2012, Defendants Aurora and Signature Healthcare Services, LLC ("Signature," and collectively, "Defendants") answered Plaintiff's Fourth Amended Complaint ("FAC") and advanced counterclaims alleging various breaches of contract, breaches of fiduciary duty, intentional interference and conversion. Dkt. 207. Plaintiff moved to strike Defendants' counterclaims pursuant to California Code of Civil Procedure § 425.16(a) – the "anti-SLAPP" legislation. The Court held a hearing on this motion (the "Motion") on July 2, 2012, and took the matter under submission. Dkt. 235. For the reasons set forth in this Order, the Court DENIES, in part, and GRANTS, in part, the Motion.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01031 JAK (RZx) | Date | September 6, 2012 |
|---|---|---|---|
| Title | United States of America v. Aurora Las Encinas, LLC, et al. | | |

## II. BACKGROUND

### A. Procedural History

On April 16, 2012, Defendants advanced seven counterclaims: (i) breach of contract; (ii) intentional interference with contractual relations; (iii) conspiracy to commit intentional interference with contractual relations; (iv) intentional interference with prospective economic relations; (v) conspiracy to commit intentional interference with prospective economic relations; (vi) conversion; and (vii) breach of fiduciary duty--duty of confidentiality. Dkt. 207. On May 7, 2012, Plaintiff filed the Motion seeking to strike Defendants' counterclaims pursuant to the anti-SLAPP statute. Plaintiff contends that the counterclaims were brought to chill Plaintiff's right to petition the government. Dkt. 211. On May 31, 2012, in connection with their May 29, 2012 opposition to Plaintiff's motion to strike, Defendants filed their first amended counterclaims against Plaintiff. Dkt. 219. Plaintiff replied to Defendants' opposition on June 18, 2012, reaching the merits, but also stating her intention to file a new motion to strike directed toward Defendants' amended counterclaims. Dkt. 227. On June 25, 2012, Plaintiff filed a motion to strike Defendants' amended counterclaims and set it for hearing on July 23, 2012. Dkt. 229. Because Defendants opposed Plaintiff's original motion to strike with the benefit of their amended counterclaims, and because Plaintiff's motion to strike the amended counterclaims largely mirrors her original motion, the Court advanced the hearing on Plaintiff's new motion to strike to July 2, 2012. Dkt. 230. Defendants were required to file any amended opposition no later than 5:00 p.m. on June 27, 2012, and Plaintiff was able to provide oral argument in response to Defendants' amended opposition at the July 2, 2012 hearing. *Id.*

### B. Factual Background

Aurora treats mental health and substance abuse patients, often by providing extended "live-in" services. For qualifying patients, federal and state insurance programs cover the costs of Aurora's services. Once a patient is admitted to the Aurora facility, the hospital prepares a treatment plan which forms the basis for the submission of claims for Medicare and Medicaid payment. Plaintiff alleges that the treatment described in the plan, and billed to the government, is not provided to the patient. Defendants allegedly direct the staff -- from physicians to social workers -- to minimize the care actually provided to the patient. Plaintiff alleges that Defendants have realized huge profits by billing for care never provided, notwithstanding the care described in the plan and the care for which bills were submitted. Plaintiff alleges that, as a result, the care that has been provided was so lacking in value that it was worthless. In particular, Plaintiff alleges that the hospital was compensated through state and federal programs for care that was deficient in many respects, including: severe understaffing and nursing staff shortages; inadequate staff-to-patient ratios and not providing patients with a 1:1 staff-to-patient ratio when such attentive care was deemed medically necessary, with the result being that patients injured themselves and escaped; failing to provide adequate care for adolescent patients, some of whom were admitted to adult units, and failing to provide adequate supervision of adolescents,

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01031 JAK (RZx) | Date | September 6, 2012 |
|---|---|---|---|
| Title | United States of America v. Aurora Las Encinas, LLC, et al. | | |

one of whom was raped; and inadequate facilities, including unsanitary conditions, the absence of sinks near restrooms, non-functioning fire alarms, and leaking plumbing and water lines which resulted in raw sewage leaking into inhabited areas.

      **C.     Overview of Defendants' Amended Counterclaims**

      Defendants Aurora and Signature allege that Plaintiff signed the Aurora Las Encinas Hospital Confidentiality and Security Agreement (the "Confidentiality Agreement") at the start of her employment on September 15, 2005. Am. Counterclaims ¶ 7, Exh. A, Dkt. 219. Under the Confidentiality Agreement, Plaintiff agreed that she would "access and use [confidential] information only when it is necessary to perform [her] job related duties in accordance with the Company's Privacy and Security Policies." *Id.* at ¶ 10, Exh. A. She also agreed that she would not "in any way divulge, copy, [or] release… any information/data, except as properly authorized." *Id.* at ¶ 11, Exh. A. On September 15, 2005, Plaintiff also signed the Aurora Las Encinas Behavioral Health Care Confidentiality and Conflicts of Interest Agreement (the "Conflicts of Interest Agreement"), *id.* at ¶ 14, under which Plaintiff agreed that she would "not take… any such owned or protected documents or matter without the written consent or authorization of an Administrator." *Id.* at ¶ 18. Plaintiff also signed the Aurora Las Encinas Behavioral Health Care Code of Conduct (the "Code of Conduct") and the Aurora Las Encinas Behavioral Health Care Annual Review of Legal Reporting Responsibilities ("Legal Reporting Agreement"). *Id.* at ¶¶ 19, 21. Under the Legal Reporting Agreement, Plaintiff "was prohibited from providing any confidential patient information to any unauthorized person who does not have a need to know and a right to that information." *Id.* at ¶ 22.

      Defendants allege that Plaintiff violated these agreements. Specifically, they allege that Plaintiff improperly accessed patient information not necessary to the performance of her job, *id.* at ¶ 23; stole and disseminated Defendants' documents, *id.* at ¶ 24; copied and removed confidential hospital information, including records containing confidential patient substance abuse and mental health information, *id.* at ¶ 25; and provided privileged and confidential information to a reporter of the *Los Angeles Times* and a private health plan, United Behavioral Health Plans ("UBH"), *id.* at ¶ 26. Defendants have presented various e-mails and Plaintiff's declaration as evidence of Plaintiff's alleged breaches. *See id.*, Exhs. B-G. As a result of these breaches, Defendants allege that UBH "restricted/suspended all admissions to [Aurora]," *id.* at ¶ 32; Health Net of California terminated its contract with Aurora, *id.* at ¶ 33; APS Healthcare denied Aurora's application for credentialing, *id.* at ¶ 34; Aurora was denied participation in ValueOptions' National Provider network, *id.* at ¶ 35; third-party payors "continue to deny [Aurora's] requests for contract renewal," *id.* at ¶ 36; and "patients themselves have refused admission to [Aurora]," *id.* at ¶ 37. With the exception of UBH, whom Plaintiff contacted directly, each of these injuries is alleged to have been caused by "Relator's theft and the unlawful sharing of privileged documents with numerous third parties, including, but not limited to, The Los Angeles Times." *Id.* at ¶¶ 32-37.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01031 JAK (RZx) | Date | September 6, 2012 |
|---|---|---|---|
| Title | United States of America v. Aurora Las Encinas, LLC, et al. | | |

### III. ANALYSIS

#### A. The Anti-SLAPP Statute

A "Strategic Lawsuit Against Public Participation," more commonly known as a "SLAPP" lawsuit, is "a meritless suit filed primarily to chill the defendant's free exercise of First Amendment rights." *Wilcox v. Super. Ct.*, 27 Cal. App. 4th 809, 815 n.2 (1994); *see* CAL. CODE CIV. PROC. § 425.16(a). Section 425.16 of the California Code of Civil Procedure, provides a procedure whereby those subjected to a SLAPP lawsuit may seek to dispose of the action at the pleading stage and thereby avoid the cost and ill-effects of litigation. *Soukup v. Law Offices of Herbert Hafif*, 39 Cal. 4th 260, 278 (2006). A motion to strike brought pursuant to section 425.16 is evaluated using a two-step process. First, the moving party -- here, because a counterclaim is at issue, Plaintiff and Counter-Defendant Eidson -- must establish whether the non-moving party's cause of action arose from "an act in furtherance of the right of petition or free speech." *City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (2002). If the moving party makes this prima facie showing, "the burden then shifts to the [non-moving party] to establish a 'probability' of prevailing on the claim by making a prima facie showing of facts that would, if proved, support a judgment in the plaintiff's favor." *Kashian v. Harriman*, 98 Cal. App. 4th 892, 906 (2002).

#### B. Step One: An Act in Furtherance of the Right of Petition or Free Speech

##### 1. Legal Standard

Section 425.16(e) provides that an "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes the following:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

When determining whether a cause of action "arises from" protected activity, section 425.16 is to be "broadly construed." CAL. CODE CIV. PROC. § 425.16(a); *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1119 (1999).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01031 JAK (RZx) | Date | September 6, 2012 |
|---|---|---|---|
| Title | United States of America v. Aurora Las Encinas, LLC, et al. | | |

      2.    <u>Underlying Activity</u>

"The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability--and whether that activity constitutes protected speech or petitioning." *Navellier v. Sletten*, 29 Cal. 4th 82, 92 (2002) (italics in original).

> [T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute. Moreover, that a cause of action arguably may have been 'triggered' by protected activity does not entail that it is one arising from such. In the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity.

*In re Episcopal Church Cases,* 45 Cal. 4th 467, 477 (2009) (citing *Navellier,* 29 Cal. 4th at 89) (italics in original, internal citations omitted). Thus, the key inquiry in this matter is whether Defendants' counterclaims against Plaintiff are premised on her protected activity of petitioning the government or the exercise of her right to free speech. Plaintiff asserts that Defendants' claims arise from the protected activity of petitioning the government because they arise from her reports to public oversight agencies and the filing of this *qui tam* action. Although those actions are clearly protected activities, Defendants' claims do not arise from those actions. Instead, Defendants' claims arise from Plaintiff's alleged breaches of confidentiality in copying Defendants' documents and disclosing information and documents to the *Los Angeles Times* and third-party payors. *See* Section II.C, *supra*.

      3.    <u>Right of Petition</u>

Plaintiff claims that her actions in copying Defendants' documents occurred "in connection with an issue under consideration or review by a… judicial body" under section 425.16(e) because she copied the documents in preparation for this *qui tam* lawsuit. However, Plaintiff's actions occurred prior to the commencement of this proceeding, and even before Plaintiff had knowledge of the availability of a *qui tam* action. *See* Am. Counterclaims, Exhs. C-G, Dkt. 219 (emails in which Plaintiff states that she was not aware of the availability of *qui tam* actions until after the *Los Angeles Times* article ran). Thus, Plaintiff copied Defendants' files before she even planned to file a lawsuit. Then, after disclosing certain information to the *Los Angeles Times*, she learned of, and began to pursue, a *qui tam* action. Accordingly, the alleged misconduct occurred well before there was any "issue under consideration" by a judicial body. Thus, there is an insufficient link between Plaintiff's actions in copying confidential documents and disclosing them to the *Los Angeles Times* and "an issue under consideration" by a judicial body. CAL. CODE CIV. PROC. § 425.16(e). Accordingly, Defendants' claims do not arise from protected activity in furtherance of Plaintiff's right of petition.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01031 JAK (RZx) | Date | September 6, 2012 |
|---|---|---|---|
| Title | United States of America v. Aurora Las Encinas, LLC, et al. | | |

    4.    <u>Right of Free Speech</u>

    Defendants' claims, with one exception,[1] do arise from Plaintiff's protected activity in furtherance of her right to free speech. Thus, they arise, at least in part, from her disclosures to the *Los Angeles Times*. Plaintiff's disclosures to the *Times* constitute protected activity because they include: "an act in furtherance of" Plaintiff's right of free speech, which is made "in connection with a public issue." CAL. CODE. CIV. PROC. § 425.16. First, Plaintiff's cooperation in the preparation and publishing of a newspaper article regarding the conditions at Aurora is an act in furtherance of Plaintiff's free speech rights. *See Hilton v. Hallmark Cards*, 599 F.3d 894, 904 (9th Cir. 2010) (noting that California courts interpret this requirement broadly, and finding that a Hallmark card "qualifies as speech and falls comfortably within the universe of types of communication that California courts have considered 'conduct in furtherance of' the exercise of free speech rights upon which to base anti-SLAPP motions to strike").

    Second, Plaintiff's involvement with communications that led to coverage in the *Los Angeles Times* constitutes an act in connection with an issue of public interest. "The California Supreme Court has not clearly established what constitutes an issue of public interest…." *Id.* at 905. In *Rivero v. American Federation of State, County, and Municipal Employees, AFL–CIO,* a California appellate court surveyed the appellate cases and identified three categories of public issues: (1) statements "concern[ing] a person or entity in the public eye"; (2) "conduct that could directly affect a large number of people beyond the direct participants"; (3) "or a topic of widespread, public interest." 105 Cal. App. 4th 913, 924 (2003). Because Plaintiff was attempting to warn the public about the alleged substandard care provided at Aurora, her speech affected a large number of people and thereby falls within the second category. Further, health care fraud on the government is a topic of widespread public interest; it has been the subject of recent legislation. *E.g.* The Healthcare Reform Law of 2010, Pub. L. 111-152. Moreover, Plaintiff's speech resulted in an article that was published in a major newspaper. The publication of this article confirms that Plaintiff's speech pertained to a topic of widespread interest. Thus, Plaintiff has met her initial burden of demonstrating that Defendants' claims arise from Plaintiff's protected speech in connection with an issue of public interest.[2]

---

[1] Defendants' claim for conversion arises only from Plaintiff's alleged taking of Defendants' documents by copying and removing them from Defendants' facility. *See* Section III.C.2.f, *infra*.

[2] Even under the more restrictive test set forth in *Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1132 (2003), Plaintiff's conduct concerns a matter of public interest because it is "something of concern to a substantial number of people" and there is a "degree of closeness between the challenged statements and the asserted public interest."

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01031 JAK (RZx) | Date | September 6, 2012 |
|---|---|---|---|
| Title | United States of America v. Aurora Las Encinas, LLC, et al. | | |

    **C.**    **Step Two: Probability of Prevailing on the Merits**

        1.    <u>Legal Standard</u>

    To defeat an anti-SLAPP motion, the non-moving party "need show only a minimum level of legal sufficiency and triability." *Grewal v. Jammu*, 191 Cal. App. 4th 977, 989 (2011). Thus, "the anti-SLAPP statute operates like a motion for summary judgment in reverse." *Id.* at 990. The court considers "the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." *Id.* at 989. The court does "not weigh credibility," nor does it "evaluate the weight of the evidence." *Id.* Instead, it accepts "as true all evidence favorable to the plaintiff and assess[es] the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law." *Id.* A plaintiff must establish only that his case has "minimal merit." *Mindys Cosmetics v. Dakar*, 611 F.3d 590, 598 (9th Cir. 2010); *see Hilton*, 599 F.3d at 908.

    Anti-SLAPP motions are not evaluated in an all-or-nothing manner; instead, the court may strike any individual cause of action that fails to meet the two-step analysis. *See Mann v. Quality Old Time Serv., Inc.*, 120 Cal. App. 4th 90, 112 (2004). Nonetheless, for each cause of action, the non-moving party must demonstrate only a probability of prevailing on any part of the claim:

> If the [non-moving party] "can show a probability of prevailing on *any part of its claim*, the cause of action is not meritless" and will not be stricken; "once a plaintiff shows a probability of prevailing on any part of its claim, the plaintiff *has established* that its cause of action has some merit and the entire cause of action stands."

*Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 820 (2011) (quoting *Mann*, 120 Cal. App. 4th at 106 (italics in original)). "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." *Navellier*, 29 Cal. 4th at 89 (italics in original). Thus, the Court must evaluate the legal sufficiency of each of Defendants' counterclaims.

        2.    <u>Defendants' Counterclaims</u>

            a)    First Claim: Breach of Contract

    The elements of a cause of action for breach of contract are "(1) the contract, (2) plaintiff's performance or excuse of non-performance, (3) defendant's breach and, (4) damages to the Plaintiff therefrom." *Wall Street, Ltd. v. N.Y. Times Co.*, 164 Cal. App. 4th 1171, 1178 (2008). Plaintiff challenges this claim on three bases: (i) that her actions fall within a "public policy exception" to the enforcement of confidentiality agreements; (ii) that her actions do not fall within the scope of the agreements; and (iii) that only Aurora, and not Signature, was a party to the agreements.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01031 JAK (RZx) | Date | September 6, 2012 |
|---|---|---|---|
| Title | United States of America v. Aurora Las Encinas, LLC, et al. | | |

(1) Public Policy Exception

First, Plaintiff contends that her alleged breach of the Confidentiality Agreement through the copying of documents in preparation for this *qui tam* action should be excused pursuant to a "public policy exception" to confidentiality agreements to protect relators. In support of this argument, Plaintiff relies on *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir. 2011). In *Cafasso*, the relator copied 11 gigabytes of electronic data, which was the equivalent of tens of thousands of pages, in anticipation of an FCA action. *Id.* at 1062. The Ninth Circuit stated that, "[a]lthough we see some merit in the public policy exception that [the relator] proposes, we need not decide whether to adopt it here." *Id.* "Even were we to adopt such an exception, it would not cover [the relator's] conduct given her vast and indiscriminate appropriation of [her former employer's] files." *Id.* The court explained that the relator testified that she decided which documents to copy by browsing through folders, and that if she saw something that she thought was relevant, she "*just grabbed the whole folder.*" *Id.* (italics in original). Because of this "indiscriminate appropriation" of files, the Ninth Circuit held that an "exception broad enough to protect the scope of [the relator's] massive document gather in this case would make all confidentiality agreements unenforceable as long as the employee later files a qui tam action." *Id.* The Ninth Circuit summarized the scope of any such public policy exception as follows:

> Were we to adopt a public policy exception to confidentiality agreements to protect relators—a matter we reserve for another day—those asserting its protection would need to justify why removal of the documents was reasonably necessary to pursue an FCA claim. [The relator] has made no such particularized showing. The need to facilitate valid claims does not justify the wholesale stripping of a company's confidential documents. Although courts perhaps should consider in particular instances for particular documents whether confidentiality policies must give way to the needs of FCA litigation for the public's interest, [the relator's] grabbing of tens of thousands of documents here is overbroad and unreasonable, and cannot be sustained by reference to a public policy exception.

*Id.* The Ninth Circuit affirmed the district court's entry of summary judgment in favor of the former employer on its claim against the relator for breach of a confidentiality agreement.

Here, Defendants allege, and Plaintiff does not dispute, that Plaintiff copied over 2,000 documents. Plaintiff has not attempted to make a particularized showing that each of those documents was reasonably necessary to pursue this action. And, assuming that a public policy exception to the enforcement of confidentiality agreements exists, it is not without boundaries and limitations. Thus, such an exception does not necessarily apply to protect Plaintiff's conduct here. Consequently, it does not bar this claim as a matter of law or demonstrate that this claim lacks even minimal merit.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01031 JAK (RZx) | Date | September 6, 2012 |
|---|---|---|---|
| Title | United States of America v. Aurora Las Encinas, LLC, et al. | | |

        (2)       Actions Not Barred By Agreements

      Plaintiff contends that this claim fails because the agreements at issue do not prohibit Plaintiff's conduct. In support of this argument, Plaintiff characterizes the contracts as permitting her to disclose confidential information to governmental administrative officials, prohibiting her from violating any laws, and requiring her to report abuse. Further, Plaintiff asserts that the contracts contemplate only the misuse of *original* documents and files, not copies of such documents.

      These arguments are not persuasive. The Confidentiality Agreement clearly prohibits the disclosure *and* copying of any confidential records. *See* Am. Counterclaims, Exh. A, Dkt. 219 ("I will not discuss or disclose any Confidential Information with others, including friends or family, who do not have a need to know it"; "I will not in any way divulge, copy, release… any information/data, except as properly authorized."). Thus, the Confidentiality Agreement applies to Plaintiff's alleged conduct.

        (3)       Signature Lacks Standing

      Plaintiff next contends that this claim should be stricken at least with respect to Signature because it is not a party to the agreements that Defendants seek to enforce. This argument is without merit because the Conflicts of Interest Agreement specifically extends Plaintiff's duties of confidentiality to Signature's documents and information:

> I understand that Aurora Las Encinas Hospital (ALEH), its parent, Signature Healthcare Services, and its related organizations engage in the provision of health care and therapeutic services and that those services must be provided with respect for both the confidentiality and integrity of the clinical relationship and the proprietary practices and procedures of those institutions. … [¶] I agree that as long as I am employed by, or affiliated with, ALEH, and at all times thereafter, I will treat all such information as proprietary to ALEH, its parent, Signature Healthcare Services, or its related organizations, and will not disclose, directly or indirectly, to a third party, or use for my own personal purpose or those of any third party, such information, except that such information is lawfully in the public domain[.]

Am. Counterclaims, Exh. A, Dkt. 219. Signature need not be a party to every contract so long as it can state a legally cognizable claim. Because it appears to have been a party to the Conflicts of Interest Agreement, which Plaintiff allegedly breached, Signature has met its burden of demonstrating that there is at least some basis for its claim for breach of contract.

        (4)       This Claim Is Legally Sufficient

      Defendants have provided evidence of Plaintiff's alleged breaches of contract, including Plaintiff's declaration, in which Plaintiff admits that she provided redacted written reports to the *Los*

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01031 JAK (RZx) | Date | September 6, 2012 |
|---|---|---|---|
| Title | United States of America v. Aurora Las Encinas, LLC, et al. | | |

*Angeles Times* and reported a patient injury to an insurance oversight agent at UBH, Eidson Decl. ¶¶ 7, 9, Am. Counterclaims, Exh. B, Dkt. 219, and emails in which Plaintiff admits to "stealing documents," *id.*, Exh. C. Thus, Defendants have met their burden of coming forward with evidence to show that their claim has at least "minimal merit." Consequently, Plaintiff's motion to strike this claim is denied.

          b)       Second Claim: Intentional Interference with Contractual Relations

"Under California law, a claim for intentional interference with contract requires: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional acts designed to induce breach or disruption of the contract; (4) actual breach or disruption; and (5) resulting damage." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 825 (9th Cir. 2008). Plaintiff challenges this claim on these grounds: (i) Defendants have failed to plead all elements; (ii) Plaintiff was not a sufficiently direct cause of any contract breach; and (iii) Defendants have not identified or alleged any identifiable benefit that Plaintiff received from her alleged interference.

          (1)       Whether Defendants Pleaded All Elements

Although Plaintiff is correct that Defendants have not identified one specific contract that forms the basis for this claim, they have alleged various contractual relationships that were allegedly affected by Plaintiff's disclosures. *See* Am. Counterclaims ¶ 32 ("UBH restricted/suspended all admission to [Aurora]."); ¶ 33 ("Health Net of California terminated its contract with [Aurora]."); ¶ 36 ("[T]hird party payors, including, but not limited to, CIGNA, Blue Cross, and MHN, continue to deny [Aurora's] requests for contract renewal."), Dkt. 219. Defendants also have submitted the declaration of Aurora's Chief Executive Officer, Gerard T. Conway, in which he declares that, following Plaintiff's actions, UBH "refused to accept admissions to Aurora Las Encinas Hospital" and other third party payors "refused to renew and/or have terminated contracts with Aurora." Conway Decl. ¶¶ 7-8, Opp., Exh. A, Dkt. 215. Finally, in an email to Dr. Joseph Haraszti, another Aurora employee, Plaintiff makes an admission about her motive:

> what i want is to destroy dr. kim and all his minions. I want to embarrass him in the papers, i want him to be criminally prosecuted  i want him to be sued so much that he will have nothing left  i want him to be hounded by the irs  i want him to be a shell of a man when im done with him

Am. Counterclaims, Exh. G, Dkt. 219 (lack of punctuation and capitalization in original).

Thus, although more factual specificity is appropriate regarding the particular contracts that were in place and how and when they were disrupted as a result of Plaintiff's conduct, Defendants have submitted evidence that supports findings that: (i) a valid contract was in place with UBH, and

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01031 JAK (RZx) | Date | September 6, 2012 |
|---|---|---|---|
| Title | United States of America v. Aurora Las Encinas, LLC, et al. | | |

potentially others; (ii) Plaintiff knew of the contract (at least with respect to UBH); (iii) Plaintiff contacted UBH with the intent to disrupt the contract by reporting certain activities, and Plaintiff disclosed information to the *Los Angeles Times* with the intent of destroying Dr. Kim, the owner of Aurora; (iv) the contract was actually breached or disrupted as a result; and (v) Defendants suffered damage because patients covered by this insurer were no longer being admitted to Aurora. Once Defendants have shown a probability of success in connection with one basis for the claim, they have met their burden with respect to the entire cause of action. *See Oasis W. Realty*, 51 Cal. 4th at 820. Thus, because Defendants have met their burden of showing that their allegations that Plaintiff intentionally interfered with their contract with UBH are legally sufficient and supported by evidence, Defendants have met their burden of showing this claim has at least minimal merit.

       (2)  Direct Cause

  Plaintiff contends that Defendants have not adequately pleaded that Plaintiff was a direct cause of the disruption of the contract. This argument is unpersuasive. With respect to UBH, for example, Plaintiff admits that she contacted UBH to alert them to the substandard care being provided at Aurora. Defendants have submitted the Conway declaration in which he states that UBH's contract with Aurora was disrupted immediately thereafter, *i.e.,* in August 2008. Conway Decl. ¶ 7, Opp., Exh. A, Dkt. 215. This evidence is sufficient to demonstrate that Plaintiff may have been the direct cause of the contract disruption.

       (3)  Benefit to Plaintiff

  Plaintiff asserts that Defendants have to prove that Plaintiff received some benefit as a result of the interference, citing *DeVoto v. Pacific Fidelity Life Insurance Co.*, 618 F.2d 1340 (9th Cir. 1980). However, Plaintiff misconstrues *DeVoto*. There, the Ninth Circuit discussed the different types of interference that can give rise to tort liability. *See id.* at 1348. First, it noted that the "simplest case for allowing recovery is when there is an intended wrongful economic appropriation, as when the act of a defendant directly diminishes the value of the plaintiff's interest and simultaneously or subsequently transfers that value to the defendant." *Id.* The Ninth Circuit then went on to discuss other actionable types of interference, including indirect interference. *See id.* In connection with this discussion, the Ninth Circuit explained that "[m]otive and purpose are also central to the concept that interference inspired by ill will or spite may be tortious." *Id.* Thus, the court did not announce a rule that only interference that results in a benefit to the alleged interferer is actionable. Instead, it explicitly acknowledged that actionable interference can be indirect and inspired by ill will or spite rather than financial gain. Accordingly, in light of Defendants' evidence of Plaintiff's ill will toward Dr. Kim, Defendants have met their burden of establishing that this claim has at least minimal merit.

  For the foregoing reasons, the Court denies Plaintiff's anti-SLAPP motion to strike Defendants' second counterclaim for intentional interference with contractual relations.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01031 JAK (RZx) | Date | September 6, 2012 |
|---|---|---|---|
| Title | United States of America v. Aurora Las Encinas, LLC, et al. | | |

        c)       Third Claim: Conspiracy to Commit Intentional Interference with Contractual Relations

"Under California law, there is no separate and distinct tort cause of action for civil conspiracy." *Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1228 (9th Cir. 1997) (citing *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503 (1994) ("Conspiracy is not an independent tort; it cannot create a duty or abrogate an immunity. It allows tort recovery only against a party who already owes the duty and is not immune from liability based on applicable substantive tort law principles.")).

Because Defendants' counterclaims are advanced only against Plaintiff, there is no need for a separate cause of action for conspiracy. A claim for conspiracy could be a basis to seek to recover damages from Plaintiff's alleged co-conspirators. However, the claim is not presently being advanced for that purpose, and is, therefore, duplicative of Defendants' claim for intentional interference. For these reasons, this claim lacks legal sufficiency. Accordingly, the Court grants Plaintiff's anti-SLAPP motion and strikes Defendants' third counterclaim for conspiracy to commit intentional interference with contractual relations.

        d)       Fourth Claim: Intentional Interference with Prospective Economic Relations

The elements of the tort of intentional interference with prospective economic advantage are: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003) (internal quotations omitted). A plaintiff stating such a claim must plead that the defendant's conduct was "wrongful by some legal measure other than the fact of interference itself." *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 392-93 (1995). "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply*, 29 Cal. 4th at 1159.

Here, Plaintiff repeats her arguments discussed above with respect to Defendants' claim for intentional interference with contractual relations. Plaintiff also argues that Defendants have not alleged that her conduct was independently wrongful. The same evidence discussed above with respect to Defendants' other intentional interference claim demonstrates that this claim also has "minimal merit." Indeed, most of Defendants' ongoing relationships with insurance companies likely are more accurately characterized as economic relationships than separate contracts. For example, Defendants allege that certain third-party payors refused to renew their contracts with Aurora as a result of Plaintiff's actions.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01031 JAK (RZx) | Date | September 6, 2012 |
|---|---|---|---|
| Title | United States of America v. Aurora Las Encinas, LLC, et al. | | |

Am. Counterclaims ¶ 36. Apparently, these decisions not to renew contracts reflected a material impediment to ongoing economic relationships.

Plaintiff's argument that her conduct was not independently wrongful is also unpersuasive. In addition to potentially being a breach of contract, Plaintiff's disclosure of privileged documents to third parties may have violated 42 U.S.C. § 290dd-2, which requires that medical records for substance abuse patients be kept confidential, and that "[a]ny person who violates any provision of this section… shall be fined." 42 U.S.C. § 290dd-2(f). Thus, because "independently wrongful" has been interpreted to mean "unlawful," Defendants' allegations preliminarily satisfy this requirement. Consequently, the Court denies Plaintiff's motion to strike Defendants' fourth counterclaim.

e) Fifth Claim: Conspiracy to Commit Intentional Interference with Prospective Economic Relations

This conspiracy claim fails for the same reasons discussed above with respect to Defendants' claim for conspiracy to commit intentional interference with prospective contractual relations. Thus, it is duplicative and subsumed by Defendants' claim for intentional interference because it is advanced only against Plaintiff. Thus, the Court strikes Defendants' fifth claim for conspiracy to commit intentional interference with prospective economic relations as legally insufficient.

f) Sixth Claim: Conversion

The elements of a claim for conversion are: "(1) the plaintiff's ownership or right to possession of personal property; (2) the defendant's disposition of the property in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages." *Fremont Indem. Co. v. Fremont Gen. Corp.*, 148 Cal. App. 4th 97, 119 (2007). "Conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Weiss v. Marcus*, 51 Cal. App. 3d 590, 599 (1975). Neither the Health Insurance Portability and Accountability Act ("HIPAA") nor the California Health and Safety Code addresses whether healthcare providers retain exclusive property rights in medical records or patient information.

To the extent that Defendants' claim for conversion is based on Plaintiff's actions in copying and taking the photocopies of documents, it fails to state a claim because Defendants have retained the originals of the property. Plaintiff has not interfered with Defendants' property right in the original documents themselves. *See, e.g.*, *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1196 (C.D. Cal. 2001) (granting motion to dismiss conversion claim when only photocopies of the documents were taken and distributed), *aff'd in part, dismissed in part on other grounds*, 90 Fed. App'x 496 (9th Cir. 2003); *VSL Corp. v. Gen. Techs., Inc.*, No. C 96–20446 RMW(PVT), 1997 WL 654103, at *4 (N.D. Cal. July 21, 1997) ("[A]s a matter of law, [plaintiff] cannot state a claim for conversion because where the

Case 2:10-cv-01031-JAK-RZ   Document 254   Filed 09/06/12   Page 14 of 16   Page ID #:4886

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01031 JAK (RZx) | Date | September 6, 2012 |
|---|---|---|---|
| Title | United States of America v. Aurora Las Encinas, LLC, et al. | | |

owner still retains originals or other copies of documents another improperly uses the owner is not deprived of the beneficial use of the information.").

If Defendants' claims are viewed as ones based on the theory that there has been a conversion of confidential information, rather than the physical records containing such information, then they are alleging conversion of intangible property. "Generally, conversion requires interference with tangible property. … Thus, there can be no conversion of the goodwill of a business, trade secrets, a newspaper route, or a laundry list of customers." 5 Witkin, SUMMARY OF CALIFORNIA LAW: Torts, § 702, p. 1025 (10th ed. 2005). Under California law, a three-part test applies to determine whether a property right exists in intangible property: (i) "there must be an interest capable of precise definition"; (ii) "it must be capable of exclusive possession or control"; and (iii) "the putative owner must have established a legitimate claim to exclusivity." *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 903 (9th Cir. 1992). "However, it is not uncommon for a person to have an intangible property right without a cause of action in conversion to protect that right." *Miles, Inc. v. Scripps Clinic & Research Found.*, 810 F. Supp. 1091, 1096 (S.D. Cal. 1993) (holding that although the researcher had a property interest in the right to commercialize a new cell line, interference with that right could not be enforced via a claim for conversion when the more appropriate cause of action, breach of contract, was time-barred).

Although Defendants may have a property right in the intangible information contained in the documents, it is not clear that they have the ability to enforce that right through a claim for conversion. Notably, Defendants do not attempt to argue that they can state a claim for conversion of intangible property; instead, they appear to be advancing only a claim for conversion of the actual physical documents themselves. *See* Am. Opp., pp. 7-8, Dkt. 233 ("Plaintiff's new motion adds nothing to her original motion other than citing *VSL Corp.* … Frankly, if this case is compelling authority, Plaintiff prevails on this issue."). Thus, Defendants' claim for conversion is legally insufficient.

Finally, the Motion fails for an independent reason. Although Defendants' claims generally arise from Plaintiff's protected disclosures to the *Los Angeles Times*, this claim arises only from Plaintiff's copying of certain documents. The copying of documents itself does not implicate Plaintiff's right to free speech. And, the copying was not crucial to Plaintiff's exercise of free speech because Plaintiff could have disclosed the relevant information to the *Los Angeles Times* without providing the reporter with copies of documents. Accordingly, the Court denies Plaintiff's motion with respect to this counterclaim on the basis that it does not arise from a protected activity, *i.e.*, it does not pass the first step of the anti-SLAPP analysis.

### g) Seventh Claim: Breach of Fiduciary Duty -- Duty of Confidentiality

Plaintiff contends that Defendants have failed to: (i) cite any authority showing that a fiduciary duty exists under these circumstances, (ii) state to whom Plaintiff owes the alleged fiduciary duty, *i.e.*,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01031 JAK (RZx) | Date | September 6, 2012 |
|---|---|---|---|
| Title | United States of America v. Aurora Las Encinas, LLC, et al. | | |

to the patients, to Defendants, or some other entity, and (iii) cite facts or any legal authority that shows Plaintiff breached any duty or that Defendants suffered damages proximately caused by any such breach. Plaintiff also contends that, apart from any fiduciary duty to Defendants, she *did* have a duty to report unsafe patient care and conditions, citing California Health and Safety Code § 1278.5(a) and 45 C.F.R. § 164.502(j), the HIPAA exemption for whistleblowers. Defendants respond that, because they put confidence in Plaintiff, and she accepted that confidence, she has a fiduciary duty and may not act so as to take advantage of Defendants' confidence.

The elements of a breach of fiduciary duty claim are (i) the existence of a fiduciary relationship; (ii) breach of the fiduciary duty; and (iii) damage proximately caused by that breach. *Roberts v. Lomanto*, 112 Cal. App. 4th 1553, 1562 (2003). "A fiduciary or confidential relationship can arise when confidence is reposed by persons in the integrity of others, and if the latter voluntarily accepts or assumes to accept the confidence, he or she may not act so as to take advantage of the other's interest without that person's knowledge or consent." *Pierce v. Lyman*, 1 Cal. App. 4th 1093, 1101-02 (1991), *superseded by statute on other grounds as stated in Century Crowell Cmtys., L.P. v. Greenblatt*, No. E050196, 2011 WL 4479213 (Cal. Ct. App. Sept. 28, 2011). Nonetheless, the acceptance of confidence alone does not and cannot operate to create a fiduciary relationship in all situations. *City of Pleasanton v. City & County of San Francisco*, No. C046005, 2005 WL 1541067, at *9 (Cal. Ct. App. June 30, 2005) (quoting *Pierce v. Lyman*, but then noting, "We do not quarrel with that statement, but it does not mean that every time one entity reposes confidence in another, a fiduciary relationship arises."); s*ee Pyong Chim Chang v. Ju*, No. B215285, 2010 WL 2739575, at *3 (Cal. Ct. App. July 13, 2010) (finding no fiduciary relationship between ill father and daughter was formed simply because father reposed trust in daughter, who assured him she would handle his financial affairs). To state a claim for breach of fiduciary duty, the plaintiff must identify "a recognized legal relationship" that establishes a duty not to act against the other party's interests. *City of Pleasanton*, 2005 WL 1541067, at *9.

"[N]o presumption of a confidential relationship arises from the bare fact that parties to a contract are employer and employee; rather, additional ties must be brought out in order to create the presumption of a confidential relationship between the two." *Odorizzi v. Bloomfield Sch. Dist.*, 246 Cal. App. 2d 123, 129 (1966). Further, "[a] confidentiality agreement does not give rise to a fiduciary relationship unless it does so expressly." *Goodworth Holdings Inc. v. Suh*, 239 F. Supp. 2d 947, 960 (N.D. Cal. 2002) *aff'd*, 99 Fed. App'x 806 (9th Cir. 2004). However, a confidentiality agreement that explicitly imposes far-reaching confidentiality and non-disclosure obligations on an employee may create a fiduciary relationship limited to the scope of those obligations. *See Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 989 (C.D. Cal. 2011) (quoting a confidentiality agreement, and noting that "[a]ny fiduciary duty imposed by the agreement was limited to the employees' obligation to maintain the confidentiality of 'proprietary information'").

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01031 JAK (RZx) | Date | September 6, 2012 |
|---|---|---|---|
| Title | United States of America v. Aurora Las Encinas, LLC, et al. | | |

Here, although the employee-employer relationship alone is insufficient to establish a fiduciary duty, the parties' many agreements regarding confidentiality and loyalty may have created a limited fiduciary duty. The evidence presented in opposition to this motion, including the agreements themselves, is sufficient to provide some basis for finding that Plaintiff had a fiduciary duty not to disclose Defendants' proprietary information. Accordingly, because this claim has at least minimal merit, Plaintiff's motion to strike it is denied.

### D.   Anti-SLAPP Attorneys' Fees

"[A]ny SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001); *see also* CAL. CODE CIV. PROC. § 425.16(c) (stating that the "prevailing defendant" on a motion to strike "shall be entitled" to recover attorneys' fees and costs). Plaintiff states that if her motion is granted, she will submit a separate noticed motion for fees and costs. Because the Court has granted Plaintiff's motion in part, Plaintiff may present a separate motion to recover the attorneys' fees that were incurred in addressing those claims that have been stricken.

### IV.   **CONCLUSION**

For the foregoing reasons, the Court GRANTS, in part, and DENIES, in part, Plaintiff's Motion. Thus, the Court strikes Defendants' third and fifth counterclaims for conspiracy to commit intentional interference with contractual relations and prospective economic advantage because they arise from activity in furtherance of Plaintiff's right of free speech and lack legal sufficiency. The Motion is DENIED as to the remaining, challenged counterclaims.

**IT IS SO ORDERED.**

:

Initials of Preparer   ak