COLLEEN FLYNN, SBN 234281
  cflynnlaw@yahoo.com
ATTORNEY AT LAW
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
Telephone: (213) 252-9444
Facsimile:  (213) 252-0091

PAULA D. PEARLMAN, SBN 109038
  paula.pearlman@lls.edu
MICHELLE UZETA, SBN 164402
  michelle.uzeta@lls.edu
RON ELSBERRY, SBN 130880
  ronald.elsberry@lls.edu
RICHARD DIAZ, SBN 285459
  richard.diaz@lls.edu
DISABILITY RIGHTS LEGAL CENTER
800 S. Figueroa Street, Suite 1120
Los Angeles, California 90017
Telephone: (213) 736-1496
Facsimile:  (213) 736-1428

MARK A. KLEIMAN, SBN 115919
  mkleiman@quitam.org
LAW OFFICES OF MARK ALLEN KLEIMAN
2907 Stanford Avenue
Venice, CA 90292
Telephone: (310) 306-8094
Facsimile:  (310) 306-8491

Attorneys for Plaintiff/Relator

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF CALIFORNIA *ex rel.*, SHELBY EIDSON,<br><br>*Plaintiffs,*<br><br>vs.<br><br>AURORA LAS ENCINAS LLC, LINDA PARKS, SIGNATURE HEALTHCARE SERVICES LLC, AND DOES 1 THROUGH 10, jointly and severally,<br><br>*Defendants.* | Case No.: CV 10-1031 JAK (RZx)<br><br>(Hon. John A. Kronstadt)<br><br>RELATOR'S STATEMENT OF GENUINE DISPUTES OF FACT IN OPPOSITION TO DEFENDANT PARKS' MOTION FOR SUMMARY JUDGMENT<br><br>Date:   April 8, 2013<br>Time:  8:30 a.m.<br>Ctrm:   750 |

i

Plaintiff/Relator Shelby Eidson submits this separate statement in opposition to Defendant Linda Parks' separate statement of undisputed facts in support of her motion for summary judgment, pursuant to Federal Rules of Civil Procedure, Rule 56(e)(2) as follows:

| NO. | DEFENDANT'S PURPORTED UNDISPUTED FACT | RELATOR'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 1. | Ms. Parks was the Chief Executive Officer of Aurora Las Encinas Hospital ("Hospital") from September 2007 to September 2009. | Undisputed. |
| 2. | Ms. Parks also served as acting director of nurses at the Hospital from October or November 2007 to April 2008. | Undisputed. |
| 3. | Ms. Parks was employed by Signature Healthcare Services LLC ("Signature") between September 2007 and September 2009. | Undisputed. |

| | | | |
|---|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7 | 4. | Ms. Parks had no relationship with the Hospital or Signature before her 2007-2009 tenure at the Hospital and never had any ownership or control interest in the Hospital or in Signature. | Undisputed. |
| 8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27 | 5. | At no time during her tenure at the Hospital did Ms. Parks have anything to do with the billing process for patient services, including the billing process [sic] government payors. | Disputed. Objection. Misleading. As CEO of defendant Aurora Las Encinas Hospital, Linda Parks was the head administrator of the Hospital. Deposition of Linda Parks at pg. 27. (**Exhibit A** to Diaz Decl.). She was responsible for oversight of the CFO and billing of insurance companies, including Medicare and Medi-Cal. *Id.* Parks attended quarterly meetings with Mickey Balzek the CFO, Blair Stam the Executive Vice President of Signature, and Dr. Kim the President and owner of Signature. *Id.* at pg. 71-72. During the meetings the CFO would give reports regarding billing. *Id*. Ms. Parks also told staff member Hillary Johnson to make sure patient charts "meet criteria" to justify hospital billing. Dec. of Hillary Johnson at pg. 4, para. 24. |

28

iii

Relator's Statement of Genuine Issues

| | | |
|---|---|---|
| | | (**Exhibit B** to Diaz Decl.). Linda Parks also told Ms. Johnson that if doctors did not document a diagnosis covered by a patient's insurance to "work it," implying she should even flirt with the doctors, so that she could get them to change patient charts to justify billing for patients' stay and treatment. *Id.* |
| 6. | Ms. Parks did not participate in any way in the preparation or submission of such bills and also had nothing to do with the receipt of sums paid to the Hospital pursuant to the bills. | Disputed. As CEO of defendant Aurora Las Encinas Hospital, Linda Parks was the head administrator of the Hospital. Parks Depo. at 27. (**Exhibit A** to Diaz Decl.) She was responsible for oversight of the CFO and billing of insurance companies, including Medicare and Medi-Cal. *Id.* Parks attended quarterly meeting with Mickey Balzek the CFO, Blair Stam the Executive Vice President of Signature, and Dr. Kim the President and owner of Signature. *Id.* at 71-72. During the meetings the CFO would give reports regarding billing. *Id*. Ms. Parks also told staff member Hillary Johnson to make sure patient charts "meet criteria" to justify hospital billing. Dec. of Hillary Johnson at pg. 4, para. 24. |

Relator's Statement of Genuine Issues

| | | | |
|---|---|---|---|
| | | | (**Exhibit B** to Diaz Decl.). Linda Parks also told Ms. Johnson that if doctors did not document a diagnosis covered by a patient's insurance to "work it," implying she should even flirt with the doctors, so that she could get them to change patient charts to justify billing for patients' stay and treatment. *Id.* |
| | 7. | During Ms. Parks' tenure at the Hospital, the billing and cost reporting functions were performed off site by billing personnel for whom Ms. Parks had no responsibility. | Disputed. As CEO of defendant Aurora Las Encinas Hospital, Linda Parks was the head administrator of the Hospital. Parks Depo. at 27. (**Exhibit A** to Diaz Decl.). She was responsible for oversight of the CFO and billing of insurance companies, including Medicare and Medi-Cal. *Id.* Parks attended quarterly meeting with Mickey Balzek the CFO, Blair Stam the Executive Vice President of Signature, and Dr. Kim the President and owner of Signature. *Id.* 71-72. During the meetings the CFO would give reports regarding billing. *Id.* Ms. Parks also told staff member Hillary Johnson to make sure patient charts "meet criteria" to justify hospital billing for insurers. Dec. of Hillary Johnson at pg. 4, para. |

v

| | | | |
|---|---|---|---|
| | | | 24. (**Exhibit B** to Diaz Decl.) Linda Parks told Ms. Johnson that if doctors did not document a diagnosis covered by a patient's insurance to "work it," implying she should flirt with the doctors, so that she could get them to change patient charts to justify payment for the patients' stay and treatment. *Id.* |
| | 8. | Ms. Parks never told the Hospital Staff or anyone else to falsify a record so that the Hospital could be paid for services or for any other improper purpose. | Disputed. Hospital staff member Lisa Ramirez, acting Staffing coordinator for a time, was told by her supervisor that Linda Parks ordered employee time sheets to be altered so that no employee would receive any overtime pay. Dec. of Lisa Ramirez at pg 9-10. (**Exhibit C** to Diaz Decl.). Hospital staff member Nadine Illaraza stated that Linda Parks would force workers to punch out for lunch in the first hour of their shift even though they were not able take a break. Dec. of Nadine Illaraza at pg. 3, para. 12. (**Exhibit D** to Diaz Decl.). Furthermore, Linda Parks told staff member Hillary Johnson to make sure patient charts include a diagnosis covered by a patient's insurance to justify hospital billing. Dec of Hillary |

Relator's Statement of Genuine Issues

| | | | |
|---|---|---|---|
| | | | Johnson at pg. 4, para. 24. (**Exhibit B** to Diaz Decl.). Linda Parks also told Ms. Johnson that if doctors did not document a diagnosis covered by a patient's insurance to "work it," implying she should even flirt with the doctors, so that she could get them to change patient charts to justify billing for patients' stay and treatment. *Id.* |
| | 9. | Patients' doctors determine the treatment and care required by a patient, not hospital administrators or nursing personnel. | Disputed to the extent Linda Parks, a non-physician, determined the treatment and care required by Hospital patients through her and her staff's policies and practices regarding 1:1 supervision. In a memo written while Linda Parks was CEO, Director of Nursing Diane Hobbs wrote that prior to starting any 1:1's approval by her was needed. BS2246. (**Exhibit E** to Diaz Decl.). Ms. Parks would instruct charge nurses to try to get 1:1s discontinued by calling the doctors to request they take the patient off 1:1 supervision. Depo. of Nadine Ilarrraza at 31:17-32:5. (**Exhibit F** to Diaz Decl.). Ms. Parks would "belittle the nurses and try to get them to change |

Relator's Statement of Genuine Issues

| | | |
|---|---|---|
| | | [the patients'] acuity." *Id* at 32:6-12. Furthermore, Linda Parks told staff member Hillary Johnson to make sure patient charts "meet criteria" to justify hospital billing for insurers. Dec of Hillary Johnson at pg. 4, para. 24. (**Exhibit B** to Diaz Decl.). Linda Parks also told Ms. Johnson that if doctors did not document a diagnosis covered by a patient's insurance to "work it," implying she should even flirt with the doctors, so that she could get them to change patient charts to justify billing for patients' stay and treatment. *Id.* |
| 10. | Ms. Parks constantly reminded Hospital staff and members of the Medical Staff at the Hospital of the importance of documenting the medical necessity of the services furnished at the Hospital. | Disputed. Objection. Misleading. Linda Parks told staff member Hillary Johnson to make sure patient charts "meet criteria" to justify hospital billing for insurers. Dec of Hillary Johnson at pg. 4, para 24. (**Exhibit B** to Diaz Decl.). Linda Parks also told Ms. Johnson that if doctors did not document a diagnosis covered by a patient's insurance to "work it," implying she should even flirt with the doctors, so that she could get them to change patient charts to justify billing |

viii

Relator's Statement of Genuine Issues

| | | |
|---|---|---|
| | | for patients' stay and treatment. *Id.* |
| 11. | The allegations in Paragraph 31 of the Fourth Amended Complaint accusing Ms. Parks of ordering Hospital staff to falsify documents used to justify bills to the government pertain to Patients 6 and 7, both of whom were self-pay patients and thus no bills were submitted to the government for these patients. | Disputed. Relator was informed that Patients 6 and 7s' hospitalization was in part paid by government funding and in part paid in cash. Eidson Depo. at pg. 34-35. (**Exhibit G** to Diaz Decl.). Furthermore, with the parcity of documents that have been produced by Defendants for Patients 6 and 7, it cannot be affirmatively concluded that they were only self-pay. |
| 12. | The Relator had no knowledge regarding any of the bills submitted by the Hospital to the government when she filed her lawsuit. | Disputed. Objection. Misleading, as it mischaracterizes Relator's deposition testimony in regards to her knowledge of bills submitted by the Hospital when she filed her lawsuit. The Relator knew of many false claims being submitted by the Hospital prior to filing her lawsuit but did not recall *seeing* any physical bills. See Edison Depo at pg. 37. Furthermore, Relator testified that she had participated in completing documents that were related to |

| | | |
|---|---|---|
| | | billing at the Hospital. *Id.* at 319. (**Exhibit G** to Diaz Decl.). *Also see British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978); *Enzo Biochem, Inc. v. Gen-Probe, Inc.*, 424 F.3d 1276, 1284 (Fed. Cir. 2005) ("Attorney argument is no substitute for evidence."). |

DATED: March 19, 2013

                COLLEEN FLYNN
                DISABILITY RIGHTS LEGAL CENTER
                LAW OFFICES OF MARK ALLEN KLEIMAN
                Attorneys for Plaintiff/Relator

                _____/s/_____
                Colleen Flynn

x

Relator's Statement of Genuine Issues