COLLEEN FLYNN, SBN 234281
*cflynnlaw@yahoo.com*
ATTORNEY AT LAW
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
Telephone: (213) 252-9444
Facsimile: (213) 252-0091

PAULA D. PEARLMAN, SBN 109038
*paula.pearlman@lls.edu*
MICHELLE UZETA, SBN 164402
*michelle.uzeta@lls.edu*
RON ELSBERRY, SBN 130880
*ronald.elsberry@lls.edu*
RICHARD DIAZ, SBN 285459
*richard.diaz@lls.edu*
DISABILITY RIGHTS LEGAL
CENTER
800 S. Figueroa Street, Suite 1120
Los Angeles, California 90017
Telephone: (213) 736-1496
Facsimile: (213) 736-1428

MARK A. KLEIMAN, SBN 115919
*mkleiman@quitam.org*
LAW OFFICES OF MARK ALLEN
KLEIMAN
2907 Stanford Avenue
Venice, CA 90292
Telephone: (310) 306-8094
Facsimile: (310) 306-8491

Attorneys for Plaintiff/Relator

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF CALIFORNIA *ex rel.,* SHELBY EIDSON,<br><br>        *Plaintiffs,*<br><br>vs.<br><br>AURORA LAS ENCINAS LLC, LINDA PARKS, SIGNATURE HEALTHCARE SERVICES LLC, AND DOES 1 THROUGH 10, jointly and severally,<br><br>        *Defendants.* | Case No.: CV 10-1031 JAK (RZx)<br><br>(Hon. John A. Kronstadt)<br><br>**RELATOR'S OPPOSITION TO DEFENDANTS AURORA LAS ENCINAS LLC, AND SIGNATURE HEALTHCARE SERVICES LLC'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) OF THE FEDERAL RULES OF CIVIL PROCEDURE** |

1

# TABLE OF CONTENTS

Page

INTRODUCTION..................................................................................2

ARGUMENT.......................................................................................3

I.   Defendants' Motion Should be Treated as a Motion for Summary
     Judgment....................................................................................3

II.  This Court Has Subject Matter Jurisdiction.....................................3

     A. <u>Defendants Cannot Prove a Public Disclosure Triggering the Public
        Disclosure Bar</u>..........................................................................4

         1. *LA Times articles do not qualify as "public disclosures" of
            Relator's "allegations and transactions"*................................5

         2. *CMS Surveys do not constitute "public disclosures" of Relator's
            "allegations and transactions"*...........................................6

         3. *Information about a prior medical malpractice lawsuit against
            defendants is not a "public disclosure" of Relator's "allegations
            and transactions"*............................................................7

         4. *Defendants cannot show that published patient allegations qualify
            as "public disclosures" of Relator's "allegations
            and transactions"*............................................................7

     B.  <u>Relator is an Original Source</u>....................................................8

         1. *Relator is not required to demonstrate she is an "original source"
            as to every allegation underlying her claims*...........................8

         2. *Relator possesses "direct and independent knowledge"*..............9

             a) **Patient Number 21**...............................................9

             b) **Patient Number 11**..............................................10

             c) **Patient Number 24**..............................................11

             d) **Patient Number 1**...............................................11

i

e)  Patient Number 12.................................................12

f)  Patient Number 13.................................................12

g)  Patient Number 15.................................................13

h)  Patient Number 34.................................................14

i)  Patient Number 37.................................................14

j)  Patient Number 38.................................................15

k)  Patient Number 50.................................................15

l)  Patient Number 26 ...............................................15

m) Patient Number 9..................................................16

n)  Patient Number 27................................................16

o)  Patient Number 28................................................17

p)  Patient Number 29.................................................17

q)  Patient Number 30.................................................18

r)  Patient Number 33................................................18

s)  Patient Number 56................................................18

t)   Patient Number 57...............................................19

u)  Patient Number 58 ...............................................19

3. *Relator voluntarily provided information regarding her allegations to the federal government prior to filing suit*.......................19

4. *Relator "had a hand" in the public disclosure of the "transaction" referenced in the Los Angeles Times*..............................21

CONCLUSION.................................................................22

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A-1 Ambulance Service, Inc. v. State of California,* 202 F.3d  (9th Cir. 2000)......................4

*Cooper v. Blue Cross & Blue Shield of Fla.*, 19 F.3d 562 (11th Cir. 1994) ..........................6

*Minnesota Ass'n of Nurse Anesthetists v. Allina Health System Corp.*, 276 F.3d 1032

 (8th Cir.2002) ......................................................................................................9

*Schindler Elevator Corp. v. United States ex rel., Kirk,* No.10-188 at *2

 (May 16, 2011) .....................................................................................................3

*U.S. ex rel. Aflatooni v. Kitsap Physician Services,* 163 F.3d 516, 525-26

(9th Cir. 1999)........................................................................................................9

*U.S. ex rel. Alcan Elec. And Engineering, Inc.* 197 F.3d 1014, (9th Cir. 1999)..................9

*U.S. ex rel. Barajas v. Northrup Corp.*, 5 F.3d 407, 410 n.6.

(9th Cir. 1993). ....................................................................................................21

*U.S. ex rel. Chen Cheng Wang v. FMC Corp.*, 975 F.2d 1412, 1415

 (9th Cir. 1992) .......................................................................................................3

*U.S. ex rel. Devlin v. State of California,* 84 F .3d 358, n.3 (9th Cir. 1996)...................21

*U.S. ex rel. Foundation Aiding the Elderly v. Horizon West ("Foundation Aiding the*

 *Elderly")*, 265 F.3d 1011(9th Cir. 2001)..................................................5, 6, 7

*U.S. ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 326)

(5th Cir. 2011). ......................................................................................................3

*U.S. ex rel. Lamers v. City of Green Bay*, 998 F. Supp., 971, 984

 (E.D. Wisc. 1998) ...............................................................................10, 11, 12, 13

*U.S. ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1518

 (10th Cir. 1996) ....................................................................................................3

*United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 656-57

 (D.C.Cir.1994) .....................................................................................................9

Opposition to Defendants' 12(b)(1) Motion to Dismiss

1

2  *United States ex. rel. Devlin v. State of California*, 84 F.3d 358, 360, n.3

3  (9th Cir. 1996)......................................................................................................22

4  **Statutes**

5  31 U.S.C. § 3729(a) .............................................................................................3

6  31 U.S.C. § 3730 ..................................................................................................3

7  31 U.S.C. § 3730(e)(4) ....................................... 2, 8,10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 21

8  31 U.S.C. § 3730(e)(4)(A)................................................................................2, 4, 8

9  31 U.S.C. § 3730(e)(4)(B).................................................................................2, 4

10 31 U.S.C. §3730(e)(2) .......................................................................................2

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Opposition to Defendants' 12(b)(1) Motion to Dismiss

1   Plaintiff/Relator Shelby Eidson submits the following Opposition to the
2   Motion to Dismiss of Defendants Aurora Las Encinas, LLC and Signature Healthcare
3   Services, LLC.

## INTRODUCTION

5   Plaintiff/Relator Shelby Eidson ("Relator") has brought suit against defendants
6   on behalf of the United States government and the State of California for violations
7   of the Federal False Claims Act ("FCA") and the California False Claims Act
8   ("CFCA"). Defendants Aurora Las Encinas, LLC and Signature Healthcare Services,
9   LLC ("Defendants") have moved to dismiss Relator's case claiming a lack of subject
10   matter jurisdiction. Defendants base their motion on there claim that: (1) there have
11   been public disclosures of the allegations and transactions disclosed in Relator's
12   complaint(s) pursuant to 31 U.S.C. §3730(e)(4)(A), and (2) Relator is not an
13   "original source" pursuant to 31 U.S.C. §3730(e)(4)(B).

14   Relator maintains, however, that this Court has subject matter jurisdiction to
15   address her claims. Relator asserts that Defendants have inaccurately characterized
16   numerous documents as "public disclosures" that are, in fact, not "public disclosures"
17   under the statute. Furthermore, even assuming *arguendo* that such documents were
18   public disclosures, Relator is an "original source" because she has "direct and
19   independent knowledge" of the allegations contained in her complaint(s), and
20   "voluntarily provided the information to the government, prior to filing this action."
21   31 U.S.C. § 3730(e)(4)(B). Even where there has been true "public disclosure," a qui
22   tam suit may still proceed if the relator is an "original source" within the meaning of
23   subsection 3730(e)(4)(B).

24   ///
25   ///
26   ///
27   ///
28

2

**ARGUMENT**

**I.   Defendants' Motion Should be Treated as a Motion for Summary Judgment.**

A challenge to jurisdiction under the public disclosure bar is "necessarily intertwined with the merits' [sic] and is, therefore, properly treated as a motion for summary judgment." *U.S. ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 326)(5th Cir. 2011).[1]   In the context of an FCA claim, a defendant asserting a jurisdictional argument under the public disclosure bar must "first point to documents plausibly containing allegations or transactions on which [the relator's] complaint is based." *Jamison*, 649 F.3d at 327. "Then, to survive summary judgment, [the relator] must produce evidence sufficient to show that there is a genuine issue of material fact as to whether his action was based on those disclosures," or that he is an original source of the complaint's allegations. *Id.* As with any summary judgment motion, in deciding jurisdiction under the public disclosure bar, the Court may not weigh the evidence or evaluate the credibility of witnesses, and all justifiable inferences will be made in the non-moving party's favor. *Id.*

**II.   This Court Has Subject Matter Jurisdiction**

"The False Claims Act provides penalties for one who 'knowingly presents... a false or fraud claim' to the government, 31 U.S.C. § 3729(a), and incentives to whistleblowers who expose the fraud. 31 U.S.C. § 3730." *U.S. ex rel. Chen Cheng Wang v. FMC Corp.*, 975 F.2d 1412, 1415 (9th Cir. 1992). To discourage opportunistic *qui tam* relators, however, the FCA contains the so-called "public disclosure bar". *Schindler Elevator Corp. v. United States ex rel., Kirk*, No.10-188 at *2 (May 16, 2011). The public disclosure bar of the FCA provides: "No court shall

---

[1] See also, U.S. ex rel. *Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1518 (10th Cir. 1996) ("When a court's subject matter jurisdiction is dependent upon the same statute that provides the substantive claim in the case, the jurisdictional question is necessarily intertwined with the merits. In a qui tam suit brought under the [False Claims Act], the jurisdictional issue of "public disclosure" clearly arises out of the same statute that creates the cause of action. Thus, a challenge under the FCA jurisdictional bar is necessarily intertwined with the merits.")(internal citations omitted).

Opposition to Defendants' 12(b)(1) Motion to Dismiss

1  have jurisdiction over an action under this section based on the public disclosure of
2  allegations or transactions in a . . . hearing . . . report . . . investigation, or from the
3  news media . . . unless . . . the person bringing the action is an original source of the
4  information." 31 U.S.C. § 3730(e)(4)(A). "For purposes of this paragraph, 'original
5  source' means an individual who has direct and independent knowledge of the
6  information on which the allegations are based and has voluntarily provided the
7  information to the Government before filing an action under this section which is
8  based on the information." 31 U.S.C. § 3730(e)(4)(B).

9       In analyzing whether the public disclosure bar applies, courts apply a two-part
10  test. First, the court must determine whether there has been a prior 'public disclosure'
11  of the 'allegations or transactions´ underlying the *qui tam* suit. *A-1 Ambulance*
12  *Service, Inc. v. State of California,* 202 F.3d 1238, 1243 (9th Cir. 2000). *If and only if*
13  there has been such a disclosure, a court must next inquire whether the relator is an
14  "original source." *Id.* Applying this test to the instant matter, it is clear that this
15  Court has subject matter jurisdiction to hear Relator's claims.

16  A. **Defendants Cannot Prove a Public Disclosure Triggering the Public**
17  **Disclosure Bar**

18       Defendants cannot show that there was prior "public disclosure" of the
19  "allegations or transactions" underlying Relator's qui tam suit. Although some
20  limited information regarding Defendants' hospital was published prior to the filing
21  of Relator's Complaint, the information published did not constitute a "public
22  disclosure" of the 'allegations or transactions´ underlying the Relator's suit. Even if
23  it did, the disclosure is not one that would bar Relator's complaint, as she is an
24  "original source" as to the patient allegations challenged by Defendants in their
25  motion.

26  ///
27  ///
28

4

1. ***LA Times articles do not qualify as "public disclosures" of Relator's "allegations and transactions"***

Defendants argue that Relator's Complaint should be dismissed because it contains – in part – similar allegations as were published in three Los Angeles Times articles. (Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss ("Memo"), p.4:16-19, 21-24; p. 5:2-4.)   Defendants *do not*, however, allege that the Los Angeles Times articles reported any allegations of fraud occurring at defendant Hospital, and certainly not that same allegations of fraud alleged by Relator. *Id*. This distinction is fatal to Defendants' argument that the LA Times articles are public disclosures.

The exhibited LA Times articles report, among other things, numerous deficiencies in patient care, unsanitary conditions, chronic understaffing, death and rape (See Exhibits E, K and N to Declaration of Patric Hooper ("Hooper Decl.") filed under seal in support of co-Defendant Linda Parks' Motion to Dismiss, Dkt 300-1..) These deficiencies, despite being published, fail to qualify as "public disclosures" under the statute because, while they reveal the "true state of facts," i.e. that defendant Hospital provides substandard care, they do not reveal the "misrepresented state of facts," i.e. that defendant Hospital does so in an effort to commit fraud against the Medicare program. *See U.S. ex rel. Foundation Aiding the Elderly v. Horizon West ("Foundation Aiding the Elderly")*, 265 F.3d 1011, 1015 (9th Cir. 2001).

Put simply, disclosures which state that a patient died, or was denied translation services, or that a hospital was dangerously understaffed, does not lead any reasonable person to therefore conclude, absent any information about misrepresentations or fraud, that these issues occurred because of an underlying scheme to defraud the Medicare program.

5

1      **2.**    **_CMS Surveys do not constitute "public disclosures" of Relator's_**

2   **_"allegations and transactions"_**

3      Defendants reference two CMS Surveys conducted at defendant Aurora Las

4 Encinas Hospital in support of their public disclosure claim. (Memo at p.4:19-20; 5:

5 8-10. See also, Exhibits F and P to Hooper Decl.). Defendants take the position that

6 CMS surveys are "reports," and that they constitute "public disclosures," pursuant to

7 the statute.

8      It is not clear whether CMS Surveys are "reports" as defined by the statute. _In_

9 _Foundation Aiding the Elderly_, the Ninth Circuit declined to make that

10 determination. _Id._ at 1012. Regardless, Relator argues that even in the case that

11 defendants' Surveys constituted "reports," said surveys do not contain the "material

12 elements" of Relator's fraud allegations. A true "public disclosure" must include all

13 elements of fraud against an identified defendant. _Cooper v. Blue Cross & Blue_

14 _Shield of Fla._, 19 F.3d 562, 566 (11th Cir. 1994).

15      In _Foundation Aiding the Elderly_, defendants similarly alleged that CMS

16 Surveys detailing substandard care provided at defendant nursing homes constituted

17 "public disclosures" of allegations that the nursing homes had defrauded the

18 government by providing "worthless services." The Ninth Circuit disagreed: "even if

19 the surveys do qualify as public disclosures, this action is still not barred because

20 none of the disclosures in the surveys…reveal either the allegations or the

21 transactions at issue." _Foundation Aiding the Elderly_, 265 F.3d at 1012.

22      Thus, CMS Surveys which allege substandard care do not qualify as "public

23 disclosures" unless they "fairly characterize the kind of fraud alleged" by a relator.

24 _Id._, at 1013. ("What is conspicuously missing…are any allegations that the named

25 defendants misrepresented the level of care to the government and received payment

26 for that substandard care… at most, these allegations only disclose the true set of

27 facts, viz., that the facility in question provided substandard care")(emphasis added).

28

Undoubtedly, Defendants' referenced surveys reveal numerous failings at defendant Hospital and provide strong support for Relator's allegations. For example, the surveys discuss the rape of an adolescent female, dead patients not checked on until they were in rigor mortis, and hazardous conditions, among other deficiencies. (Exhibits F and P to Hooper Decl.)   Importantly, Relator's reports of fraud and substandard care are what led to these Surveys in the first place; the fact that her complaints were substantiated by government regulators underscores the accuracy of her allegations.

### 3. *Information about a prior medical malpractice lawsuit against defendants is not a "public disclosure" of Relator's "allegations and transactions"*

Defendants allege that a medical malpractice lawsuit filed against Defendants related to an alleged rape at the Hospital triggers the public disclosure bar. (Memo at 5:5-7.   Again, this is not true. A disclosure which contains only the "true state of facts" but not the "misrepresented state of facts" does not constitute a "public disclosure" under the statute. *Foundation Aiding the Elderly v. Horizon West, supra*. The medical malpractice complaint may contain the true state of facts as to the rape that occurred at the Hospital and the Defendants' chronic understaffing and patient deficiencies, but does not contain the misrepresented state of facts necessary to establish the "material elements" of the fraudulent transaction or scheme alleged by Relator in her complaint(s).

### 4. *Defendants cannot show that published patient allegations qualify as "public disclosures" of Relator's "allegations and transactions".*

Defendants do not present any evidence of, or specific claims that published allegations involving specific patients qualify as "public disclosures" of Relator's "allegations and transactions".   Rather, they rely, unconvincingly, on the general arguments addressed above.   Those general arguments are not enough to support a

7

1  finding that there were prior "public disclosure" of the "allegations or transactions"

2  underlying Relator's qui tam suit.  Accordingly, the Court need not look any further,

3  and should deny Defendants' motion.

4  **B.**   **Relator is an Original Source**

5  Although Defendants have wholly failed to demonstrate that there have been

6  public disclosures that would bar her complaint, Relator nonetheless addresses her

7  status as an "original source" as to the patient allegations challenged by Defendants

8  in their motion.

9  A relator can pursue her False Claims Act case if she is an "original source"

10  pursuant to the statute, even where there have been public disclosures that would

11  otherwise bar such a complaint. 31 U.S.C. § 3730(e)(4)(A).  As defined by the FCA,

12  an "original source": (1) has direct and independent knowledge of the information on

13  which the allegations are based and (2) has voluntarily provided the information to

14  the government before filing this action, 31 U.S.C. § 3730(e)(4).

15  *1. Relator is not required to demonstrate she is an "original source"*

16  *as to every allegation underlying her claims*

17  As an initial matter, it should be clarified that Relator need not demonstrate

18  that she is an "original source" as to every allegation underlying her claims.

19  However, the Supreme Court explained in *Rockwell* that a relator must qualify as an

20  original source for each distinct kind of *claim* or *scheme* alleged[2], and that the

21  original source status hinges on whether the relator has direct and independent

22  knowledge of the information underlying the relator's own allegations in the FCA

23  action, not the information underlying the public disclosure. 549 U.S. at 470–72, 476.

24  Moreover, "§ 3730(e)(4)(B) does not require that the qui tam relator possess

25  direct and independent knowledge of all of the vital ingredients to a fraudulent

26  transaction .... [but] refers to direct and independent knowledge of *any essential*

27  _____

28  [2] In the instant case, Relator alleges only one kind of scheme – billing for worthless services.

8

1    *element* of the underlying fraud transaction ...." *United States ex rel. Springfield*
2    *Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 656-57 (D.C.Cir.1994)(emphasis added).
3    See also *Minnesota Ass'n of Nurse Anesthetists v. Allina Health System Corp.*, 276
4    F.3d 1032, 1050 (8th Cir.2002) ("[T]o qualify as an original source, a relator does
5    not have to have personal knowledge of all elements of a cause of action."). So, for
6    example, in *Minnesota Association of Nurse Anesthetists v. Allina Health System*
7    *Corp.*, the court held that nurses' direct knowledge of operating room practices,
8    despite their lack of access to billing records, was sufficient to satisfy original source
9    status.

10            **2.  *Relator possesses "direct and independent knowledge".***

11        Relator's complaint(s) adequately demonstrate that she has both "direct" and
12    "independent" knowledge of the patient allegations and transactions detailed in her
13    complaint(s). "Direct" knowledge implies a close connection between the relator and
14    the discovery of fraud, as for example, when the relator's information derives from
15    her own investigation. *U.S. ex rel. Aflatooni v. Kitsap Physician Services,* 163 F.3d
16    516, 525-26 (9th Cir. 1999).  "Independent" knowledge is derived from substantive
17    information that is not dependent on a public disclosure. *U.S. ex rel. Alcan Elec. And*
18    *Engineering, Inc.,* 197 F.3d 1014, 1020 (9th Cir. 1999). Thus, independent knowledge
19    is simply knowledge not gleaned from a public disclosure.  Relator has demonstrated
20    her direct and independent knowledge of the patient allegations challenged in
21    Defendants' Motion and must prevail in her opposition.  The patients enumerated by
22    Defendants -- 21;11; 24; 1; 12; 13; 15; 34; 37; 3; 8; 50; 26; 9; 27; 28; 29; 30; 33; 34;
23    57; and 58 -- are addressed separately below:

24                    **a) Patient Number 21**

25        Relator qualifies as an "original source" with regard to Patient 21. As defined
26    by the FCA, an "original source": (1) has direct and independent knowledge of the
27    information on which the allegations are based and (2) has voluntarily provided the
28

Opposition to Defendants' 12(b)(1) Motion to Dismiss

1   information to the government before filing this action, 31 U.S.C. § 3730(e)(4).

2   Relator has direct and independent knowledge of the events that occurred because

3   she was an employee at the hospital when the incidents alleged in her complaint

4   occurred.   Relator was witness to the incidents of fraud involving patients and/or

5   heard of about them directly and contemporaneously from co-workers who worked

6   with the affected patients. In regards specifically to Patient 21, Relator recalls

7   specking to co-workers about the Patient and hearing about the Patient in meetings at

8   the hospital. Uzeta Decl., Exhibit 1, at p. 359:7-25. Information obtained as a result

9   of communications between an employee and her superior, or between two

10  employees, whether written, oral, or electronic qualifies as "direct and independent

11  knowledge" of alleged fraud. *U.S. ex rel. Lamers v. City of Green Bay*, 998 F. Supp.,

12  971, 984 (E.D. Wisc. 1998)(finding "direct" knowledge based on observations of

13  corporate employee that were revealed to the corporate president serving as relator),

14  aff'd, 168 F.3d 1013, 1017-1018 (7th Cir. 1999) (holding that relator's own firsthand

15  knowledge and investigative efforts qualified as direct and independent knowledge).

16  Relator regularly worked on the unit where the incident occurred. Uzeta Decl.,

17  Exhibit 1, at p. 359:7-25.

18                    **b) Patient Number 11**

19  Relator qualifies as an "original source" with regard to Patient 11. As defined by the

20  FCA, an "original source": (1) has direct and independent knowledge of the

21  information on which the allegations are based and (2) has voluntarily provided the

22  information to the government before filing the action, 31 U.S.C. § 3730(e)(4).

23  Relator has direct and independent knowledge of the events that occurred because

24  she was an employee at the hospital when the incidents alleged in her complaint

25  occurred.    In regards specifically to Patient 11, Relator has testified that she

26  remembered the patient and recalled that the patient was staying on the first floor unit

27  of the hospital when the incident occurred. Uzeta Decl., Exhibit 1, at p. 433:10-18.

28

Opposition to Defendants' 12(b)(1) Motion to Dismiss

1   Furthermore, Relator reported the lack of translation service being given to Patient 11
2   in her emails to CMS/Joint Commission before the alleged disclosure that
3   Defendants claim the information was from.  Dkt. 109-3, at p. 10.

4                   c) **Patient Number 24**

5          Relator qualifies as an "original source" with regard to Patient 24. As defined
6   by the FCA, an "original source": (1) has direct and independent knowledge of the
7   information on which the allegations are based and (2) has voluntarily provided the
8   information to the government before filing this action, 31 U.S.C. § 3730(e)(4).
9   Although Relator was not working at the hospital when the incident with Patient 24
10  occurred, she was told of the event by co-workers when she began working there.
11  Uzeta Decl., Exhibit 1, at pp. 349:3-18-350:18-23. Information obtained as a result of
12  communications between an employee and her superior, or between two employees,
13  whether written, oral, or electronic qualifies as "direct and independent knowledge"
14  of alleged fraud. *U.S. ex rel. Lamers v. City of Green Bay*, 998 F. Supp., 971, 984
15  (E.D. Wisc. 1998)(finding "direct" knowledge based on observations of corporate
16  employee that were revealed to the corporate president serving as relator), aff'd, 168
17  F.3d 1013, 1017-1018 (7th Cir. 1999) (holding that relator's own firsthand
18  knowledge and investigative efforts qualified as direct and independent knowledge).

19                  d) **Patient Number 1**

20         Relator qualifies as an "original source" with regard to Patient 1.  As defined
21  by the FCA, an "original source": (1) has direct and independent knowledge of the
22  information on which the allegations are based and (2) has voluntarily provided the
23  information to the government before filing the action, 31 U.S.C. § 3730(e)(4).
24  Relator has direct and independent knowledge of the events that occurred because
25  she was an employee at the hospital when the incidents alleged in her complaint
26  occurred.  In regards specifically to Patient 1, Relator reported the incident to CMS
27  and the Joint Commission before the CMS Survey and the LA Times article
28

11

mentioned by Defendants were released. Uzeta Decl., Exhibit 1 at p. 4. Furthermore, Relator recalled these incidents and was able to remember that she was working on the unit around the time the incident occurred.  Uzeta Decl., Exhibit 1, at pp. 381:1-25-382:1-21.

### e)  **Patient Number 12**

Relator qualifies as an "original source" with regard to Patient 12.  As defined by the FCA, an "original source": (1) has direct and independent knowledge of the information on which the allegations are based and (2) has voluntarily provided the information to the government before filing the action, 31 U.S.C. § 3730(e)(4). Relator has direct and independent knowledge of the events that occurred because she was an employee at the hospital when the incidents alleged in her complaint occurred.   In regards specifically to Patient 12, Relator recalls specifically that Patient 12 tried to hang herself two times.  Uzeta Decl., Exhibit 1, at p. 384:1-25. Furthermore, Relator was the mental health worker on duty during Patient 12's first attempted hanging and was the one who found her hanging from the sink. *Id.* 386:3-10. Realtor even recalls in detail the events leading up to the attempted hanging and who was on the unit when the attempted hanging occurred. *Id.* 395:13-397:2 Finally, Relator reported the incident to CMS and the Joint Commission before the September 18, 2009, CMS survey was released. 109-3, at p. 7.

### f)  **Patient Number 13**

Relator qualifies as an "original source" with regard to Patient 13.  As defined by the FCA, an "original source": (1) has direct and independent knowledge of the information on which the allegations are based and (2) has voluntarily provided the information to the government before filing the action, 31 U.S.C. § 3730(e)(4). Relator has direct and independent knowledge of the events that occurred because she was an employee at the hospital when the incidents alleged in her complaint occurred. Relator was witness to the incidents of fraud involving patients and/or

Opposition to Defendants' 12(b)(1) Motion to Dismiss

heard of about them directly and contemporaneously from co-workers who worked with the patients in question. Information obtained as a result of communications between an employee and her superior, or between two employees, whether written, oral, or electronic qualifies as "direct and independent knowledge" of alleged fraud. *U.S. ex rel. Lamers v. City of Green Bay*, 998 F. Supp., 971, 984 (E.D. Wisc. 1998)(finding "direct" knowledge based on observations of corporate employee that were revealed to the corporate president serving as relator), aff'd, 168 F.3d 1013, 1017-1018 (7th Cir. 1999) (holding that relator's own firsthand knowledge and investigative efforts qualified as direct and independent knowledge). In regards specifically to Patient 13, Relator had knowledge of the patient being admitted to the hospital in 2009. Uzeta Decl., Exhibit 1, at p. 406:1-15.   Furthermore, Relator remembered that Patient 13 "was a high at-will risk patient" that was left unsupervised and AWOL'd (eloped from the unit). *Id.* at 407:1-14, 23-25.

### g) Patient Number 15

Relator qualifies as an "original source" with regard to Patient 15. As defined by the FCA, an "original source": (1) has direct and independent knowledge of the information on which the allegations are based and (2) has voluntarily provided the information to the government before filing this action, 31 U.S.C. § 3730(e)(4). Relator has direct and independent knowledge of the events that occurred because she was an employee at the hospital when the incidents alleged in her complaint occurred.   In regards specifically to Patient 15, Relator had personal knowledge of her and "...knew her very well." Uzeta Decl., Exhibit 1, at p. 329:1-24. Furthermore, Relator goes into great detail of her recollection of the unit, the nurse on the unit, the authorization from the doctor, and the eventual denial of the 1:1 supervision by Cheryl Cook. *Id.* at 330:2-331:7.

///

///

13

### h) **Patient Number 34**

Relator qualifies as an "original source" with regard to Patient 34. As defined by the FCA, an "original source": (1) has direct and independent knowledge of the information on which the allegations are based and (2) has voluntarily provided the information to the government before filing the action, 31 U.S.C. § 3730(e)(4). Relator has direct and independent knowledge of the events that occurred because she was an employee at the hospital when the incidents alleged in her complaint occurred.   In regards specifically to Patient 34, Relator stated that she recalled this patient very well and was put on 1:1's several times prior to the incident involving an assault. Uzeta Decl., Exhibit 1, at p. 340:5-14. Relator also remembers that this patient was put on a 1:1 in her presence. *Id.* Furthermore, Relator remembers that this patient often required seclusion and restraints. *Id.*

### i) **Patient Number 37**

Relator qualifies as an "original source" with regard to Patient 37. As defined by the FCA, an "original source": (1) has direct and independent knowledge of the information on which the allegations are based and (2) has voluntarily provided the information to the government before filing the action, 31 U.S.C. § 3730(e)(4). Relator has direct and independent knowledge of the events that occurred because she was an employee at the hospital when the incidents alleged in her complaint occurred.   In regards specifically to Patient 37, Relator personally worked with this patient.  Uzeta Decl. Exhibit 1, at p. 379:4-18.  Relator remembers Patient 37 being taken off 1:1 supervision by DNO Diane Hobbes and the patient subsequently mutilating herself.  *Id.*  See also, Relator's August, 10, 2009 email to CMS reporting patient incidents. Dkt. 109-3 at p. 4.

///

///

14

### j)  **Patient Number 38**

Relator qualifies as an "original source" with regard to Patient 38. As defined by the FCA, an "original source": (1) has direct and independent knowledge of the information on which the allegations are based and (2) has voluntarily provided the information to the government before filing the action, 31 U.S.C. § 3730(e)(4). Relator has direct and independent knowledge of the events that occurred because she was an employee at the hospital when the incidents alleged in her complaint occurred.  In regards specifically to Patient 38, Relator personally recalls this patient and remembers that she had to go to the ER on numerous occasions because she inserted items into her vagina, into her mouth, and swallowed things she was not supposed to.  Uzeta Decl., Exhibit 1, at pp. 410:10-411:14.

### k)  **Patient Number 50**

Relator qualifies as an "original source" with regard to Patient 50. As defined by the FCA, an "original source": (1) has direct and independent knowledge of the information on which the allegations are based and (2) has voluntarily provided the information to the government before filing the action, 31 U.S.C. § 3730(e)(4). Relator has direct and independent knowledge of the events that occurred because she was an employee at the hospital when the incidents alleged in her complaint occurred.  In regards specifically to Patient 50, Relator personally worked with this patient.  Uzeta Decl., Exhibit 1, at p. 346:3-5.

### l)  **Patient Number 26**

Relator qualifies as an "original source" with regard to Patient 26. As defined by the FCA, an "original source": (1) has direct and independent knowledge of the information on which the allegations are based and (2) has voluntarily provided the information to the government before filing the action, 31 U.S.C. § 3730(e)(4). Relator has direct and independent knowledge of the events that occurred because

she was an employee at the hospital when the incidents alleged in her complaint occurred.  In regards specifically to Patient 26, Relator personally recalls this Patient and the fact that he was hospitalized in an open unit when he was there to receive involuntary, acute treatment.  Uzeta Decl., Exhibit 1, at pp. 477:13-479:6.

### m) **Patient Number 9**

Relator qualifies as an "original source" with regard to Patient 9. As defined by the FCA, an "original source": (1) has direct and independent knowledge of the information on which the allegations are based and (2) has voluntarily provided the information to the government before filing the action, 31 U.S.C. § 3730(e)(4). Relator has direct and independent knowledge of the events that occurred because she was an employee at the hospital when the incidents alleged in her complaint occurred.  In regards specifically to Patient 9, Relator personally remembers this patient. Uzeta Decl., Exhibit 1, at pp. 422:24-423:1.  Relator was informed that Patient 9 lit her sheets by individuals present during the incident.  Uzeta Decl., Exhibit 1, at p. 424:1-7.

### n) **Patient Number 27**

Relator qualifies as an "original source" with regard to Patient 27. As defined by the FCA, an "original source": (1) has direct and independent knowledge of the information on which the allegations are based and (2) has voluntarily provided the information to the government before filing the action, 31 U.S.C. § 3730(e)(4). Relator has direct and independent knowledge of the events that occurred because she was an employee at the hospital when the incidents alleged in her complaint occurred.  In regards specifically to Patient 27, Relator worked directly with Patient 27 "on many, many occasions." Uzeta Decl., Exhibit 1, at p. 459:22-25.  Relator personally witnessed Patient 27's multiple admissions at the Hospital and the lack of

16

1   discharge planning which led to her exhausting all her Medicare lifetime benefits.

2   Uzeta Decl., Exhibit 1, at pp. 461:1-462:20.

3   ### o) **Patient Number 28**

4   Relator qualifies as an "original source" with regard to Patient 28. As defined

5   by the FCA, an "original source": (1) has direct and independent knowledge of the

6   information on which the allegations are based and (2) has voluntarily provided the

7   information to the government before filing the action, 31 U.S.C. § 3730(e)(4).

8   Relator has direct and independent knowledge of the events that occurred because

9   she was an employee at the hospital when the incidents alleged in her complaint

10  occurred.  In regards specifically to Patient 28, Relator stated that this was "a patient

11  she knew well" because of his multiple trips to the hospital.  Uzeta Decl., Exhibit 1,

12  at p. 462:21. Relator also recalled that this patient at one time was held on the first

13  floor unit and suffered from depression. *Id.* at 463:1-15.

14  ### p) **Patient Number 29**

15  Relator qualifies as an "original source" with regard to Patient 29. As defined

16  by the FCA, an "original source": (1) has direct and independent knowledge of the

17  information on which the allegations are based and (2) has voluntarily provided the

18  information to the government before filing the action, 31 U.S.C. § 3730(e)(4).

19  Relator has direct and independent knowledge of the events that occurred because

20  she was an employee at the hospital when the incidents alleged in her complaint

21  occurred.  In regards specifically to Patient 29, Relator "remembered this patient

22  well." Uzeta Decl., Exhibit 1, at p. 469:9-13. She remembered that the patient paid a

23  portion of her payment with cash and a portion was paid through a government

24  program. *Id.*

25  ///

26  ///

27

28

17

### q) **Patient Number 30**

Relator qualifies as an "original source" with regard to Patient 30. As defined by the FCA, an "original source": (1) has direct and independent knowledge of the information on which the allegations are based and (2) has voluntarily provided the information to the government before filing the action, 31 U.S.C. § 3730(e)(4). Relator has direct and independent knowledge of the events that occurred because she was an employee at the hospital when the incidents alleged in her complaint occurred.   During Relator's deposition, Defense counsel began questioning her regarding Patient by claiming that Patient 30 was a women who was in her thirties. Uzeta Decl., Exhibit 1, at p. 470:20-25.  Relator corrected counsel and expressed her personally recollection of Patient 30 – an older gentleman who would go out on passes with his wife. *Id.* at pp. 471:10-15,472:1-6.

### r) **Patient Number 33**

Relator qualifies as an "original source" with regard to Patient 33. As defined by the FCA, an "original source": (1) has direct and independent knowledge of the information on which the allegations are based and (2) has voluntarily provided the information to the government before filing the action, 31 U.S.C. § 3730(e)(4). Relator has direct and independent knowledge of the events that occurred because she was an employee at the hospital when the incidents alleged in her complaint occurred. Uzeta Decl., Exhibit 1, at pp. 374:18-375:3. Relator recalls speaking to co-workers about this adolescent patient, specifically to a staff member who felt uncomfortable in what was being asked of her in dealing with the patient. *Id.* at 378:2-16. Furthermore, Relator remembered that this patient was brought to the hospital by another facility, which means that the admitting department cleared the patient. *Id.*

///

Opposition to Defendants' 12(b)(1) Motion to Dismiss

### s) **Patient Number 56**

Relator qualifies as an "original source" with regard to Patient 56. As defined by the FCA, an "original source": (1) has direct and independent knowledge of the information on which the allegations are based and (2) has voluntarily provided the information to the government before filing the action, 31 U.S.C. § 3730(e)(4). Relator has direct and independent knowledge of the events that occurred because she was an employee at the hospital when the incidents alleged in her complaint occurred.  In regards specifically to Patient 56, Realtor recalls that this patient was in the hospital repeatedly. Uzeta Decl., Exhibit 1, at p. 79:20-80:23.

### t) **Patient Number 57**

Relator qualifies as an "original source" with regard to Patient 57. As defined by the FCA, an "original source": (1) has direct and independent knowledge of the information on which the allegations are based and (2) has voluntarily provided the information to the government before filing the action, 31 U.S.C. § 3730(e)(4). Relator has direct and independent knowledge of the events that occurred because she was an employee at the hospital when the incidents alleged in her complaint occurred.  During her deposition, Realtor had a recollection of this patient although she could not – at the time - remember many details about the patient. Uzeta Decl., Exhibit 1, at pp. 80:10-23, 455:8- 456:3.

### u) **Patient Number 58**

Defendants reference this patient in their moving papers in passing (Memo at p. 11:23-24), but present no evidence suggesting a lack of knowledge with regard to this patient.

///

///

### 3. *Relator voluntarily provided information regarding her allegations to the federal government prior to filing suit*

Relator prolifically reported incidents at defendant Hospital to federal regulators, for *two years* prior to filing suit. As she clearly states in her Fourth Amended Complaint, Relator reported violations to: "the Joint Commission, the Department of Public Health, Patients Rights of Los Angeles, the Medicare Fraud Unit of the Attorney General's Office, and Office of the Inspector General, Wage and Hour Division of the Department of Labor  and Centers for Medicare Services" (Dkt. 150, Para. 142).

Furthermore, Relator exchanged emails with Melissa Hart, counsel at OIG-HHS, and federal regulators at CMS. Dkt. 109-3. The dates of these emails clearly show that Relator's reports precede the publication of newspaper articles and CMS surveys. *Id*. Most importantly, the dates on these emails show that Relator reported her allegations to the government *prior to* filing suit. *Id*. These emails are a small sampling of reports Relator has made to regulators.

In addition to proving that Relator informed the government of the fraud *before* she filed suit, these emails provide adequate evidence that her knowledge of the fraud, and of the "transactions" referenced in her complaint(s), is "direct" and "independent." Relator's emails to CMS describe patients/transactions in detail, showing that she did not just "copy" information from newspaper articles and government reports and inject it into her complaint(s). The emails reflect that Relator knows *details* about patients and incidents that are not mentioned in any articles or reports. For example, Relator knows the names of patients, their insurance plans, admitting dates, locations of incidents, and the staffers and administrators involved in such incidents. In her August 10, 2009 email to CMS regulators, Relator writes that,

///

20

"In order to avoid having to pay for extra staffing, nursing administration overruled doctors' orders for 1:1 staff to patient ratio in times of urgent need (for suicide or awol risk patients). This has resulted in both patient and employee injuries, as well as preventable patient elopements. These orders came directly from Linda Parks, CEO, and Diane Hobbs, CNO….On Adolescent unit (Cherokee) female patient _____, a known self-mutilator, was taken off 1:1 status by CNO Diane Hobbs and subsequently cut her arms with a sharp metal object recovered on the unit. This incident occurred in March 2009. Ms. _____ is a Medi-Cal recipient."

Dkt. 109-3.

### 4. *Relator "had a hand" in the public disclosure of the "transaction" referenced in the Los Angeles Times*

In addition to the two statutory requirements issued by 31 U.S.C. § 3730(e)(4), the Ninth Circuit requires that a relator has "had a hand in the public disclosure of allegations that are a part of ….[t]he suit." *United States ex. rel. Devlin v. State of California*, 84 F.3d 358, 360, n.3 (9th Cir. 1996). (internal quotations omitted)(emphasis added).  All this requires is that a play some role in the public disclosure of newly asserted allegations. *U.S. ex rel. Barajas v. Northrup Corp.*, 5 F.3d 407, 410 n.6. (9th Cir. 1993).

Here, Relator "had a hand" in the public disclosure of this medically unnecessary care because she approached the Los Angeles Times, and CMS, with information about medically unnecessary care provided at defendant Hospital prior to the public disclosure. Dkt. 109-3.

///
///
///
///

21

**CONCLUSION**

On the basis of the foregoing facts and law, Relator Eidson respectfully requests this Court deny Defendants' motion to dismiss.   Relator has produced evidence sufficient to show that there is a genuine issue of material fact as to whether her action was based on public disclosures, and if it was, whether it may continue nonetheless due to her status as an original source of the action's allegations.

DATED: March 20, 2013

COLLEEN FLYNN
DISABILITY RIGHTS LEGAL CENTER
LAW OFFICES OF MARK ALLEN KLEIMAN
Attorneys for Plaintiff/Relator

/s/
Colleen Flynn

22

Opposition to Defendants' 12(b)(1) Motion to Dismiss