**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01031 JAK (RZx) | Date | April 12, 2013 |
|---|---|---|---|
| Title | United States of America, et al. v. Aurora Las Encinas, LLC, et al. | | |

Present: The Honorable     JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE

| Andrea Keifer | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

Proceedings:     **(IN CHAMBERS) ORDER DENYING DEFENDANT LINDA PARKS' MOTION TO DISMISS ACTION (DKT. 300) AND DEFENDANT AURORA LAS ENCINAS, LLC, AND SIGNATURE HEALTHCARE SERVICES, LLC'S MOTION TO DISMISS (FILED UNDER SEAL - DKT. 333)**

I.     <u>Introduction</u>

Plaintiff/Relator Shelby Eidson ("Plaintiff"), a former employee of Defendant Aurora Las Encinas Hospital, LLC ("Aurora"), has filed this *qui tam* action pursuant to federal (31 U.S.C. §§ 3729 *et seq.*) and California (Cal. Gov't Code §§ 12651 *et seq.*) false claims acts. From 2005 through 2011, Plaintiff was employed by Aurora as a mental health worker. In this action, Plaintiff contends that Defendants submitted false claims to the government under Medicare, Medicaid and Medi-Cal plans. In 2008, after several patients allegedly died tragic and preventable deaths, Plaintiff began reporting patient incidents both to government regulators and the Los Angeles Times. On February 11, 2010, Plaintiff commenced this action on behalf of the government. Compl., Dkt. 1.

The operative Fourth Amended Complaint ("FAC," Dkt. 150) names the following Defendants: Aurora Las Encinas, LLC ("Aurora"); Linda Parks ("Parks"); and Signature Healthcare Services, LCC ("Signature"). The FAC advances five causes of action: (i) violations of the Federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.*; (ii) violation of the California False Claims Act, Cal. Gov't Code §§ 12651 *et seq.*; (iii) unlawful retaliation in violation of the Federal False Claims Act, 31 U.S.C. § 3730(h); (iv) unlawful retaliation in violation of the California False Claims Act, § 12653; (v) unlawful retaliation in violation of the California Health and Safety Code, Cal. Gov't Code § 1278.5.

Defendant Parks filed a motion to dismiss ("Parks' Motion," Dkt. 300) and Defendants Aurora and Signature filed a similar motion ("Aurora's Motion," Dkt. 333) (collectively, the "Motions"). These Motions seek dismissal for lack of subject matter jurisdiction under Civil Rule 12(b)(1). Defendants contend that there is no jurisdiction pursuant to 31 U.S.C. § 3730(e)(4).[1]

---

[1] The Motions refer only to this federal statute. Neither Motion presents any legal argument with respect to the state claims.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01031 JAK (RZx) | Date | April 12, 2013 |
|---|---|---|---|
| Title | United States of America, et al. v. Aurora Las Encinas, LLC, et al. | | |

On April 8, 2013, the Court held a hearing on these matters at which it stated its tentative views, heard oral argument, and took the Motions under submission. Dkt. 403. For the reasons stated in this Order, the Court DENIES the Motions.

## II.    Factual Background

Defendants have identified four sources of material they contend to have been in the public record at the time Plaintiff filed this action. They argue that each disclosed the basis of Plaintiff's allegations regarding substandard care: (i) a complaint in an employment wage and hour action against Aurora (the "*Alberts* Complaint");[2] (ii) a complaint in suit by a patient against Aurora (the "*Cervantes* Complaint");[3] (iii) *Los Angeles Times* articles;[4] and (iv) CMS Survey Reports.[5] Based on these disclosures, Defendants argue that there is no jurisdiction under the FCA.

## III.    Analysis

### A.    Legal Standard

#### 1.    Jurisdictional Bar Based on Public Disclosure

The Ninth Circuit has explained the operation of the jurisdictional bar to False Claims Act ("FCA") claims based on public disclosure:

The Act prohibits false or fraudulent claims for payment to the United States, 31 U.S.C. § 3729(a), and authorizes civil actions to remedy such fraud to be brought by the Attorney General, § 3730(a), or by private individuals in the government's name, § 3730(b)(1). However, the Act also provides that

[n]o court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or

---

[2]  *Alberts et al. v. Aurora Behavioral Health Care, et al.*, Los Angeles Superior Court (Case No. BC419340). Exh. M, Dkt. 305-2.

[3]  *Cervantes, et al. v. Aurora Las Encinas Hospital et al.*, Los Angeles Superior Court (Case No. GC043433). Exh. O, Dkt. 305-2.

[4]  Exh. E, Dkt. 305-1, is an article from August 21, 2008; Exh. K, Dkt. 305-2, is an article from March 3, 2009; Exh. N, Dkt. 305-2, is an article from August 7, 2009.

[5]  CMS is an abbreviation for "Center for Medicare and Medicaid Services." The CMS Survey Reports are "statements of deficiencies" and are disclosed to the public 90 days after being provided to Aurora. The CMS Survey Report for September 2008 is Exhibit F, Dkt. 305-1; the CMS Survey Report for September 2009 is Exh. P, Dkt. 305-2.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV10-01031 JAK (RZx) | Date | April 12, 2013 |
| Title | United States of America, et al. v. Aurora Las Encinas, LLC, et al. | | |

Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information. § 3730(e)(4)(A).

The public-disclosure bar in § 3730(e)(4)(A) sets up a two-tiered inquiry. First, "we must determine whether there has been a prior 'public disclosure' of the 'allegations or transactions' underlying the qui tam suit." *A-1 Ambulance Serv.,* 202 F.3d at 1243. "If and only if there has been such a public disclosure, we next must inquire whether the relator is an 'original source' within the meaning of § 3730(e)(4)(B)." *Id.* Relators, as the qui tam plaintiffs, bear the burden of establishing subject-matter jurisdiction by a preponderance of the evidence. *United States v. Alcan Elec. & Eng'g, Inc.,* 197 F.3d 1014, 1018 (9th Cir.1999).

*U.S. ex rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1198-99 (9th Cir. 2009) ("*Meyer*").[6]

"[F]or the suit to be barred, Defendants must show that its essential elements, both the alleged truth and the allegedly fraudulent statements, were publicly disclosed via an enumerated source." *United States v. Catholic Healthcare W.*, 445 F.3d 1147, 1152 (9th Cir. 2006) *abrogated on other grounds by Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 131 S. Ct. 1885 (2011).

a)      Public Disclosure

The public-disclosure question potentially implicates two distinct but related determinations. First, "we must decide whether the public disclosure originated in one of the sources enumerated in the statute." [*A-1 Ambulance Serv., 202 F.3d at 1243.*] When a public disclosure originates in one of these sources, we must then determine "whether the content of the disclosure consisted of the 'allegations or transactions' giving rise to the relator's claim, as opposed to 'mere information.' " *Id.* (quoting *Hagood v. Sonoma County Water Agency,* 81 F.3d 1465, 1473 (9th Cir.1996)). For a qui tam suit to be "based upon" a prior public disclosure, § 3730(e)(4)(A), the publicly disclosed facts need not be identical with, but only substantially similar to, the relator's allegations. *See United States ex rel. Lujan v. Hughes Aircraft Co.,* 243 F.3d 1181, 1189 (9th Cir.2001); *see also United States ex rel. Biddle v. Bd. of Trustees of Leland Stanford, Jr. Univ.,* 161 F.3d 533, 537 (9th Cir.1998) ("[A] claim is 'based upon' public disclosure when the claim repeats allegations that have already been disclosed to the public.").

*Meyer*, 565 F.3d at 1199.

---

[6] "On March 23, 2010, the President signed into law the Patient Protection and Affordable Care Act, Pub.L. 111–148, 124 Stat. 119. Section 10104(j)(2) of this legislation replaces the prior version of 31 U.S.C. § 3730(e)(4) with new language. The legislation makes no mention of retroactivity, which would be necessary for its application to pending cases . . . ." *Graham County Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280 n.1 (2010). Plaintiff's action was filed in February 2010. Dkt. 1. Accordingly, it is governed by the prior version of 31 U.S.C. § 3730(e)(4).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01031 JAK (RZx) | Date | April 12, 2013 |
|---|---|---|---|
| Title | United States of America, et al. v. Aurora Las Encinas, LLC, et al. | | |

> Public disclosure may occur in only three categories of fora: (1) in a "criminal, civil, or administrative hearing"; (2) in a "congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation"; or (3) in the "news media." § 3730(e)(4)(A); *A-1 Ambulance Serv.,* 202 F.3d at 1243.

*Id.* at 2000.

> The substance of the disclosure, however, need not contain an explicit "allegation" of fraud, so long as the material elements of the allegedly fraudulent "transaction" are disclosed in the public domain. *See id.* (citing *United States ex rel. Springfield Terminal Ry. v. Quinn,* 14 F.3d 645, 654 (D.C.Cir.1994)).

*U.S. ex rel. Found. Aiding The Elderly v. Horizon W.*, 265 F.3d 1011, 1014 *opinion amended on denial of reh'g sub nom. U.S. ex rel. Found. Aiding Elderly v. Horizon W., Inc.*, 275 F.3d 1189 (9th Cir. 2001) ("*Foundation*").

> [I]n order for the jurisdictional bar to apply, that disclosure must reveal the "allegations or transactions" underlying Appellants' complaint. *See Hagood,* 81 F.3d at 1473. In analyzing whether *allegations* of fraud were previously disclosed, we must determine whether there was a public disclosure of fraud which was "substantially similar to those disclosed in the earlier . . . action." *See United States ex rel. Lujan v. Hughes Aircraft Co.,* 162 F.3d 1027, 1033 (9th Cir.1998). In analyzing whether the *transactions* underlying a relator's complaint were publicly disclosed, however, we adopt the analysis first laid out by the District of Columbia Circuit in *Springfield Terminal:*
>
> > [I]f X + Y = Z, Z represents the allegation of fraud and X and Y represent its essential elements. In order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, i.e., the conclusion that fraud has been committed.
>
> 14 F.3d at 654. In so doing, we also adopt the District of Columbia Circuit's reasoning that in a fraud case, X and Y inevitably stand for but two elements: "a misrepresented state of facts and a true state of facts." *Id.* at 655.

*Id.* at 1015.

Prior allegations cannot merely disclose the "the true set of facts, *viz.*, that the facility in question provided substandard care." *Id.* When only those allegation are made, "any allegations that the named defendants misrepresented the level of care to the government and received payment for that alleged substandard care" are "conspicuously missing" and such prior allegations do not constitute prior public disclosure of the allegations of a complaint stating an FCA claim. *Id.* Thus, there is no substantial similarity between prior allegations and FCA claim allegations unless the prior allegation "'fairly characterizes' the kind of fraud" in an FCA claim, whether or not the prior allegations were identified as such. *See id.*

Similarly, the public disclosure of a transaction that reveals the underlying fraud is not sufficient to bar a

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01031 JAK (RZx) | Date | April 12, 2013 |
|---|---|---|---|
| Title | United States of America, et al. v. Aurora Las Encinas, LLC, et al. | | |

claim under the FCA if the disclosure reveals only the true state of facts, *i.e.,* that defendant provided substandard care. *Id.* at 1016. Rather, "in order to invoke the jurisdictional bar, a defendant must show that the transaction . . . be one in which a set of misrepresented facts has been submitted to the government." *Id.* at 1016-17 (internal quotation marks omitted); *see also U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 655 (D.C. Cir. 1994) ("*Springfield*") ("Fraud requires recognition of two elements: a misrepresented state of facts *and* a true state of facts. The presence of one or the other in the public domain, but not both, cannot be expected to set government investigators on the trail of fraud.").

    **B.    Application**

None of the four identified sources of public disclosure is sufficient to bar this action under the standards set forth in *Foundation*. Thus, none of them constitutes an allegation or evidence with respect to a transaction that shows any misrepresentation made to the government or shows that payment from the government was received for the alleged substandard care. The *Alberts* Complaint makes only fleeting references to the staffing problems creating substandard care and does not make any allegations of fraud or of worthless services being billed to the government. The *Cervantes* Complaint alleges the plaintiff was raped as the result of the hospital's practices and alleges fraud because Plaintiff and her family were told that the facility was safe and because records were falsified regarding whether 15-minute checks of patients were performed. The newspaper articles and the CMS Survey Reports both contain specific allegations about failures in patient care and identify situations where the records regarding patient checks did not appear to match what likely occurred; however, they do not contain any material that could be construed as allegations or transactions of misrepresentations *to* the government. Taken together, the material identified suggests that the "true state of facts" was very problematic and troubling, but, under the standards of *Foundation*, is insufficient to show that the government was given a "misrepresented state of facts." Thus, there is no showing of either a publicly-disclosed allegation of the type of fraudulent conduct that is required for an FCA claim or a publicly-disclosed transaction indicating a misrepresentation to the government.

Defendants make several arguments in response to these circumstances. None is persuasive. *First*, that substandard care was being provided, which is all that is disclosed in the *Alberts* Complaint and is the primary allegation of the other materials, is not sufficient. *Foundation* clearly rejected the contention that the disclosure of substandard care, which only reveals the true set of facts, is sufficient to show a public disclosure that bars a claim under the FCA.

*Second*, the materials do not sufficiently indicate fraud of the type required under *Foundation*. There are insufficient allegations about, or transactions concerning, misrepresentations made *to the government*, particularly those relating to billing for services. There are certain allegations of fraud and evidence of misrepresentations in the materials: (i) the allegations in the *Cervantes* Complaint that misrepresentations were made to the patient and her family regarding the standard of care and the safety of the hospital; and (ii) the allegations in the newspaper articles and CMS Survey Reports that patient records reflected compliance with supervision requirements that were not actually being performed. However, *Foundation* holds that these allegations do not constitute prior public disclosure as defined by the FCA:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01031 JAK (RZx) | Date | April 12, 2013 |
|---|---|---|---|
| Title | United States of America, et al. v. Aurora Las Encinas, LLC, et al. | | |

Several documents purportedly publicly disclosed allegations of fraud against at least some Appellees, including the parent company of all of the other Appellees, Horizon West, Inc. For example, a complaint filed in the Yolo County Superior Court raises general allegations of fraud against some of the Appellees. In the body of the complaint, however, the plaintiffs only alleged that the defendants generally misrepresented to them the level of care provided by the particular nursing facility. While these allegations may disclose some fraud on the part of the defendants, they only remotely support the claims at issue. *Indeed, at most, these allegations only disclose the true set of facts, viz., that the facility in question provided substandard care. What is conspicuously missing from that complaint are any allegations that the named defendants misrepresented the level of care to the government and received payment for that alleged substandard care.*

*Id.* at 1015 (italics added).

The Sixth Circuit reached a different result in a case decided before *Foundation.* Thus, it held that an allegation of falsified records was sufficient public disclosure because the records were "presumably" falsified in order to be submitted to the government. *U.S. ex rel. Jones v. Horizon Healthcare Corp.*, 160 F.3d 326, 332 (6th Cir. 1998) ("*Jones*"). The premise for the holding in *Jones* was that, when the publicly-disclosed material suggests an "inference of impropriety" (as opposed to being innocuous on its face), a different analysis was appropriate than when the publicly-disclosed material did not create an inference of impropriety. *Id.* However, *Jones* predates *Foundation. Foundation* also involved circumstances in which the deficiencies with the care were apparent in the public disclosure, but *Foundation* did not discuss the distinction recognized in *Jones.* Therefore, a proper reading of *Foundation* is that the distinction recognized in *Jones* has not been adopted by the Ninth Circuit. Indeed, the *Foundation* court rejected a contention that a newspaper article that contained an allegation of a "premature" entry on patient's chart was a sufficient public disclosure of a fraudulent transaction. 265 F.3d at 1016 n.5. The Court commented that this allegation "sheds little light on the current allegations-namely, that payments were sought for care not given." *Id.* Here, although the material suggests that some care claimed in the records may not have been given, the material does not indicate that payments for such care were sought or provided.

*Third*, there is also no basis under *Foundation* for finding sufficient public disclosure of the elements of an FCA claim because an entity is known both to have provided substandard care to some patients and to provide services for certain patients covered by government insurance programs. In *Foundation*, the Ninth Circuit acknowledged the existence of surveys which showed that the defendant provided substandard care. *Id.* at 1016. The *Foundation* court discussed the surveys and explained that "[i]n order to participate in either Medicare or Medicaid, skilled nursing facilities must permit the surveys at issue and the inspections on which they are based," citing 42 U.S.C. § 1395i-3(g)(2)(A)(i) and its associated regulations. 265 F.3d at 1015 n.4. However, the Ninth Circuit did not find that the surveys met the jurisdictional bar because "a defendant must show that the transaction . . . be one in which a set of misrepresented facts has been submitted to the government." *Id.* at 1016-17 (internal quotation omitted). Accordingly, under *Foundation*, public disclosure that a facility that participates in Medicare or Medicaid is providing substandard care to at least some patients is not a public disclosure sufficient to trigger the jurisdictional bar of public disclosure of fraudulent billing to the government. This is the rule notwithstanding that it might be reasonable to draw such an inference. Here, the *Los Angeles Times*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01031 JAK (RZx) | Date | April 12, 2013 |
|---|---|---|---|
| Title | United States of America, et al. v. Aurora Las Encinas, LLC, et al. | | |

articles report that the government threatened to end the funding of the Defendants' facility based on the incidents of substandard care. However, this reporting discloses only that the hospital had patients who were receiving government funding and does not state or otherwise reveal that any patients receiving such care were those whose care was covered by government payments or that the government was billed for the substandard care. Instead, the reporting merely confirms that Aurora was receiving payments from government insurance programs. Similarly, that there were CMS Survey Reports implies that Aurora was receiving payments from Medicare and/or Medicaid; otherwise, CMS would have no reason to review the facility. However, these same inferences could have been drawn in *Foundation* as a sufficient basis to find disclosure. But, that was not what *Foundation* held.

*Fourth*, Defendants identify statements made by Plaintiff which they contend indicate that the public disclosures led government lawyers to be interested in investigating the case.[7] However, actual government knowledge is irrelevant under the applicable disclosure standard.[8] Further, Plaintiff's comment does not clearly suggest that news articles were the only basis for the government lawyers' interest. Thus, because private contact was also made, it is not clear that their interest arose only "because" of the articles. Finally, even if certain government lawyers *did* infer the possibility of false claims solely from the publicly-disclosed materials, that does not mean that the content of the public materials was sufficient to have put the government on notice under the objective standard adopted in *Foundation*.[9]

*Fifth*, Defendants contend that the public disclosure bar is a "quick trigger" to get to the original source analysis such that deciding the Motions on the public disclosure issue is inappropriate. *See Hagood v. Sonoma County Water Agency*, 81 F.3d 1465, 1476 n.18 (9th Cir. 1996) ("The original source test is often treated as the focus of the jurisdictional inquiry, with courts treating the 'based upon public disclosure' step as a 'quick trigger to get to the more exacting original source inquiry.'"). However, this contention is unpersuasive. *Hagood* is not even a clear statement of the Ninth Circuit's standard. Instead, the cited passage is a footnote that mentions how the test is "often treated" with citations to decisions from other Circuits. *See id.* Further, the purpose of the footnote in *Hagood* was to explain why the Ninth Circuit assumed, without analysis, that there might have been public disclosure, because the relator was clearly an original source. Accordingly, the jurisdictional bar would not apply whether or not there was public

---

[7] Specifically, Plaintiff stated in July 2009 that "i didn't feel like the private investigators helped with anything except making some important calls to the office of the inspector general and the us attys office. as i told you before, both places are very interested in the possibility of a qui tam, because of ron's articles." Exh. L, Dkt. 305-2.

[8] The 1986 amendments changed the test from one of the government's actual knowledge to whether the material in the public domain was sufficient to give the government knowledge. *Graham County Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280 (2010) ("Congress apparently concluded that a total bar on *qui tam* actions based on information already in the Government's possession thwarted a significant number of potentially valuable claims. Rather than simply repeal the Government knowledge bar, however, Congress replaced it with the public disclosure bar in an effort to strike a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits . . . ."). Thus, even telling a government employee in private does not constitute public disclosure for the purposes of the public disclosure bar. *Meyer*, 565 F.3d at 1200.

[9] As previously noted, *Springfield* stated that the presence of only one of the two elements of fraud in the public domain "cannot be expected to set government investigators on the trial of fraud." 14 F.3d at 655.

---

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV10-01031 JAK (RZx) | Date | April 12, 2013 |
| Title | United States of America, et al. v. Aurora Las Encinas, LLC, et al. | | |

disclosure. Finally, the Ninth Circuit has not referenced a "quick trigger" standard in any subsequent case. In contrast, *Foundation*, decided after *Hagood*, shows that the requirement is substantive.

*Sixth*, Defendants contend that the system for Medicare billing and reimbursement for the nursing homes that was in place more than ten years ago when *Foundation* was decided is not what was used during the later, relevant time period in this case with respect to psychiatric hospitals. They argue that the substandard care being provided at nursing homes at that earlier time would not provide the same basis for an inference of fraud in Medicare billing as would substandard care provided at a psychiatric hospital at the times relevant to this action. In support of this position, Defendants contend that, 10 years ago, nursing homes were reimbursed for their expenditures at a rate proportional to the percentage of government-pay individuals to whom care was provided at the nursing home. In contrast, they argue that, with respect to the time period relevant here, psychiatric hospitals billed at a flat daily rate that is linked to a patient's diagnosis. Accordingly, Defendants contend that a failure to provide care in a nursing home, *e.g.,* by purposefully understaffing, would not necessarily lead to an inference of fraud because a nursing home would not have been reimbursed for expenses not incurred. In contrast, Defendants contend, reducing costs in a flat-rate system increases profits. These arguments are not persuasive. A nursing home can incur costs that would get reimbursed without actually providing appropriate services, *e.g.*, if employees are paid, but do not actually perform their duties or perform their duties in such a way as to render the services provided worthless.

*Seventh*, Defendants contend that *Meyer* was decided by a panel similar to the one that decided *Foundation,* yet *Meyer* does not include an extensive analysis of the public disclosure issue. However, in *Meyer*, the Ninth Circuit noted that the relators had conceded that a lawsuit filed sixth months earlier "contains similar fraud allegations" to the relators' own FCA suit. 565 F.3d at 1199. Accordingly, the absence of additional analysis as to disclosure is not significant; it was unnecessary in light of the record and the resulting conclusions.

*Eighth*, Defendants contend that it is problematic that Plaintiff can escape the public disclosure bar where the specific allegations in support of her FCA claim are derived from already-public material while only general allegations are presented as to fraudulent billing to the government. They contend that a finding that there was no public disclosure under these circumstances is inappropriate because Plaintiff has acknowledged not having any personal knowledge of such billing. Defendants argue that this result does not serve the policy behind *qui tam* actions. However, the D.C. Circuit addressed this issue when it formulated the test adopted by the Ninth Circuit in *Foundation*:

> Congress, by its careful choice of terminology in the 1986 amendments, navigated between the two extremes . . . to create a standard under which *qui tam* actions are barred only when enough information exists in the public domain to expose the fraudulent transaction (the combination of X and Y), or the allegation of fraud (Z). When either of these conditions is satisfied, the government itself presumably can bring an action under the FCA and there is no place in the enforcement scheme for *qui tam* suits.

> Section 3730(e)(4)(A)'s bar focuses more on the quantum of information already in the public sphere than on the amount or quality of information brought forward by the *qui tam* plaintiff. . . [I]f the elements of the fraudulent transaction (X + Y) are already public,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**


**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV10-01031 JAK (RZx) | Date | April 12, 2013 |
| Title | United States of America, et al. v. Aurora Las Encinas, LLC, et al. | | |

plaintiff's additional information, even if nonpublic, cannot suffice to surmount the jurisdictional hurdles. . . Similarly, there may be situations in which all of the critical elements of fraud have been publicly disclosed, but in a form not accessible to most people, *i.e.*, engineering blueprints on file with a public agency. Expertise in the field of engineering would not in itself give a *qui tam* plaintiff the basis for suit when all the material elements of fraud are publicly available, though not readily comprehensible to nonexperts. . . *However, where only one element of the fraudulent transaction is in the public domain (e.g., X), the qui tam plaintiff may mount a case by coming forward with either the additional elements necessary to state a case of fraud (e.g., Y)* or *allegations of fraud itself (e.g., Z).*

*Springfield*, 14 F.3d at 654-55 (italics added). Defendants have not identified material in the public domain that, under the test in *Foundation*, sufficiently discloses either: (i) a prior, substantially similar allegation of fraud that would constitute the necessary elements of an FCA claim, whether or not alleged as such; or (ii) a transaction that shows a misrepresentation to the government. Accordingly, absent a showing that such material was in the public domain, Plaintiff's complaint, consistent with the *Springfield* analysis, has added the allegation of fraud itself.

For the foregoing reasons, the identified public materials did not, under *Foundation,* disclose allegations or transactions sufficient to bar this FCA action. Accordingly, the Motions are DENIED.


**IT IS SO ORDERED.**

:

Initials of Preparer   ak